WILLIAM REDUS' v. TALLIAFERRO BURNETT.

(Case No. 4786.)

1. PRACTICE.— When the issues involved in a cause are such as to require explanation to a jury, the proper practice is for the court to do this in a general charge, and not submit the case to the jury entirely on charges asked by the parties and given.

2. SAME.— Instructions asked by counsel should always be signed by them; for though it may be ascertained by whom they were asked by reference to bills of exception, the judge may, it seems, properly refuse to sign a bill of exceptions based on a refusal to give or on the giving of a charge asked, and which is so marked by him.

3. DECREE.— See statement of case for a decree of a chancery court of Mississippi, made the basis of an action in Texas, which was held to be final in its character.

4. SUIT ON JUDGMENT RENDERED IN ANOTHER STATE.— When suit is brought on a judgment of a sister state, the defendant may show that he was never served with process in the former suit, and never appeared either in person or by attorney; following Norwood v. Cobb, 15 Tex., 500, and Chunn v. Gray, 51 Tex., 114.

5. VERDICT NOT SUPPORTED BY EVIDENCE.— See statement of case for facts in evidence which were held not sufficient to support a verdict. If the verdict finding that appellant had authorized counsel to appear for him, was not wholly unsupported by the testimony, it was contrary to the weight of evidence, and, for the want of sufficient proof to sustain the verdict, a new trial should have been granted.

6. EVIDENCE.— Evidence of the good or bad character of one who is neither a party or a witness in a cause, and whose reputation is not made an issue therein, should be excluded as irrelevant; and in this case its improper admission may have created a false issue which controlled the verdict of the jury.

APPEAL from Bexar. Tried below before the Hon. Geo. H. Noonan.

Suit by Talliaferro Burnett against William Redus, filed the 12th day of September, 1879, on a decree of the chancery court for Monroe county, Mississippi, rendered on the 14th day of February, 1873, against William Redus and one T. W. Baker, who, it was alleged, were the executors of the estate of Aaron Redus, deceased, for the sum of $10,456. Judgment against William Redus for the sum of $8,990.

The errors assigned were: First. The court erred in overruling the objection of the defendant to the introduction in evidence, by the plaintiff, of the record of the proceedings of the chancery court of Monroe county, Mississippi, in the matter of the settlement of the estate of Aaron Redus, deceased, which said record is set out in the statement of facts:

1st. Because the decree embraced therein was rendered without first having been set down for hearing, and without the consent of all the parties thereto, and without a previous hearing on the part of this defendant.

2d. Because the same does not show affirmatively that said court had jurisdiction of the person of this defendant.

3d. Because it does show affirmatively that the decree sued on was not a final decree.

The decree was as follows:

"ESTATE OF AARON REDUS, dec'd.

"*Decree.* } In the matter of the final settlement by T. W. Baker and William Redus, Executors, etc.

"Be it remembered, that on this, the 11th day of February, 1873, it being a regular court day of the January term, 1873, of the chancery court of Monroe county, Mississippi, came on for further hearing and examination the final account of the executors, T. W. Baker and Wm. Redus, as restated and filed November, 1872, under former decree of this court, exceptions thereto, proofs, etc.; and the court having carefully examined the same, and being fully advised, thereon, doth now order, adjudge and decree that exceptions No. 1 and 2 (filed December 9, 1872) be overruled, and that No. 3 of said exceptions be sustained. That said executors charge themselves with interest on the balance at eight per cent. per annum, appearing due by them in said final account, from July 1, 1861, to date, and receive credits in settlement with distributees for sums paid each, and interest thereon from date of such payment to the present term; whereupon came said executors and charged themselves with

the further sum of ($17,573.71) seventeen thousand five hundred and seventy-three 71-100 dollars, interest on $24,360 admitted to be in the hands of executors, making a balance of ($41,933.83) forty-one thousand nine hundred and thirty-three 83-100 dollars against said executors on their final account for distribution under the last will and testament of decedent, after paying all debts, commissions and special legacies. And it appearing that all persons interested in said estate have been, either by citation regularly served and returned or publication regularly made and proven, notified to appear and show cause why the said final account should not be allowed and said executors discharged. And it appearing that no exceptions or objections to the said final account, except these herein and heretofore disposed of, have been made, and the said account being now in all things properly stated, and the items thereof supported by legal vouchers, and, after full investigation, the court being satisfied that the same is just and true; it is, therefore, ordered, adjudged and decreed that said final account be approved and allowed; it further appearing that under the last will and testament said sum, $41,933.83, should be divided into fourteen shares, of which Talliaferro Burnett is entitled to four [viz., his own share and the share of Mary, Martha and Thomas, his deceased brother and sisters], and that each of said shares is $2,995.27, amounting in the aggregate to $11,981.08 for said four shares, but it further appearing that the payment of said executors thereon, with interest, leaves still due said Talliaferro Burnett the sum of $10,456.40, it is ordered, adjudged and decreed that said T. W. Baker and Wm. Redus pay said sum to said Talliaferro Burnett, and that execution issue therefor as at common law, to be levied of the goods and chattels, lands and tenements of the said T. W. Baker and Wm. Redus; it further appearing that said executors have fully paid off the shares due to Sarah C. Turner, Elizabeth O. Hines and George Redus, it is further ordered, adjudged and decreed that they recover nothing, and that said execution be discharged as to them; it further appearing that payment has been made by said executors on the shares of the other distributees, but the same not being fully shown, it is ordered that as to said shares it be referred to the clerk and master to take and state an account between said executors and each of said distributees, to wit, Luther W. Redus, James W. Redus, John Redus, Mary Crawford, Wm. Redus and Lula Redus, in which account the said clerk and master shall charge the executors with the sum due on said shares, and allow them credit for all the proper payments and interest thereon at eight per cent. per annum from the date of

such payment (not prior to July 1, 1861) to the present time; that he make report thereof to this court of his actings and doings in this regard, and that this cause stand over till the coming in of said report. 　　　　　　　　　　　O. H. Whitfield,
　　　　　　　　　　　　　　　　　　　　　　"Chancellor."

(Then follows in the transcript the report of the clerk and master, as directed by the court in the foregoing decree.)

It being claimed that W. DeB. Hooper represented appellant in the chancery court which rendered the decree, the evidence was as follows:

William Redus, the defendant, testified: "I never filed an inventory of the estate, or any other paper that I have any recollection of, and never authorized any person to represent me, or file any exhibit or account or any other paper with my name. I never knew or heard of the proceeding resulting in the judgment sued on in this cause until after the judgment was rendered. I was not present during the pendency of such proceedings, and was not during the time said proceedings were had in the state of Mississippi. I was never served with any paper, citation, or writ of any kind, and I never gave T. W. Baker, or any other person, any authority to employ attorneys to represent me. I corresponded with T. W. Baker, but I never knew of this proceeding, and never wrote to him to have me represented. I never employed any attorneys. Gholson & Hooper were not my attorneys. I have known Gen. Gholson all my life, but never saw or knew Mr. Hooper. I never employed them or either of them to represent me in the matter in question, and do not know that they ever did so. If they did so, it was without my knowledge or consent."

Robert Houston, after testifying that the law firm of which he was a member were the attorneys of the heirs and Talliaferro Burnett in the matter of the final settlement of the estate of Aaron Redus, deceased, continued as follows: "I do know Sam'l J. Gholson; he is my present partner in the practice of law. He was practicing law on the 14th day of February, 1873, and he, together with his partner, Capt. W. DeB. Hooper, were the attorneys of T. W. Baker and William Redus, executors of the last will and testament of Aaron Redus, deceased. ：．．Houston & Houghton were the attorneys who represented Talliaferro Burnett. Gholson & Hooper represented William Redus, and were also the attorneys of T. W. Baker."

Lafayette Houghton testified: "Houston & Houghton represented Talliaferro Burnett, and Gholson & Hooper represented

---

---

Baker and Redus in the litigation pertaining to the settlement of the estate of Aaron Redus."

S. J. Gholson testified: "I am acquainted with the parties to this suit. I am a practicing lawyer, and have been since 1830. Gholson & Hooper were attorneys for T. W. Baker, one of the executors, and Houston & Houghton were the attorneys for some of the heirs of Aaron Redus in the litigation which was had in 1872 and 1873 in the settlement of the estate of said Aaron Redus. William Redus had no attorney to represent him in the case that I know of, and was not present at any time during the pendency of the proceedings that I have any knowledge of. Gholson & Hooper, being myself and my partner W. DeB. Hooper, represented T. W. Baker, and were employed by him and paid by him. No attorney represented Wm. Redus that I have any personal knowledge of."

On cross-examination, S. J. Gholson says: "W. DeB. Hooper was my law partner in 1873. The firm of Gholson & Hooper did not appear for or represent William Redus in anything in connection with the estate of Aaron Redus, deceased. In restating the final account the name of William Redus was used by Mr. Hooper, who restated the account. The firm of Gholson & Hooper had no authority to represent William Redus, and never did so to my knowledge."

*N. O. Green, A. W. Houston* and *L. N. Walthall,* for appellant, cited on finality of decree, Rose v. Woodruff, 4 Johns. Ch., 547; Norwood v. Cobb, 24 Tex., 551; Pennoyer v. Neff, 95 U. S. (5 Otto), 714; Starbeck v. Murray, 5 Wend. (N. Y.), 148; Mitchell v. Runkle, 25 Tex. Sup., 132; Gwin v. McCarroll, 1 S. & M. (Miss.), 351 (see p. 368); Edwards v. Toomer, 14 S. & N., 76; Story Conf. Laws, sec. 592; Linn v. Aramboul, Tex. L. J., February 8, 1882; Freeman on Judg., sec. 29.

*Simpson & James* and *H. L. Gosling,* cited for appellee, Dunman v. Hartwell, 9 Tex., 495; Cook v. Thornhill, 13 Tex., 297; Norwood v. Cobb, 15 Tex., 504; 17 Tex., 128; 11 Amer. Dec., 383, 389.

WEST, ASSOCIATE JUSTICE.— The court in this case gave no charge of its own to the jury, but contented itself with giving and refusing such instructions as were asked by the respective parties.

The main issues on which they were to pass, owing to this absence of a general charge from the court, were not fully and clearly set forth and explained to the jury, as they ought always to be in cases of this character.

The instructions asked by each party are wanting in the signature of counsel to them. The statute (R. S., art. 1319), it is true, does not in so many words say that the instructions asked by each party shall be signed by the party asking them, or his counsel, but such is the obvious meaning of the law, and they should, in every instance, be signed by the party or his counsel. In the absence of this precaution, it must be frequently difficult to determine by whom the instructions offered were prepared and tendered.

In the case before us, it is only by a reference to a bill of exceptions, contained in the record, that we learn that certain instructions were given that were asked by the appellee. This bill the judge might, it seems, have refused to sign, as the statute appears to provide that no bill of exceptions is required to bring up for review instructions that are given or refused and so marked by the judge. R. S., art. 1320.

The assignments of error are eighteen in number, and some of these are subdivided into five or six minor heads. It is not deemed necessary to notice them in detail.

All those assignments which bring in question the legality of the original appointment and qualification of appellant as executor, as well as those that bring in question the action of the chancery court in rendering a decree without first setting the cause down for hearing at a regular term of the court, and those that question the form of the decree and deny its finality, will be passed by. We regard the decree as one final in its character. Johnson v. Davis, 7 Tex., 173; Cannon v. Hemphill, 7 Tex., 184; Merle v. Andrews, 4 Tex., 200; Whiting v. Bank of U. S., 13 Pet., 523; Weatherford v. James, 2 Ala., 175; Forgay v. Conrad, 6 How. (U. S.), 202.

The other matters may be considered as perhaps errors or irregularities, but not of such a nature as to render the decree void, or subject to attack on this ground in this proceeding.

It is well settled as the law of this state, that where an action in our courts is based on a judgment of a sister state, that the party can show by way of defense that he was never served with process, or that he never appeared either in person or by attorney. In short, he may show that he has never had his day in court. Norwood v. Cobb, 15 Tex., 500; S. C., 24 Tex., 551; Chunn v. Gray, 51 Tex., 114; Drinkard v. Ingram, 21 Tex., 650.

In this case this defense was set up, and on this point the charge of the court cannot be said to be entirely incorrect. It did not, however, present this matter quite as fully and as clearly to the jury as ought to have been done. The court contented itself, it appears,

with giving the views of the law on this point as suggested by the appellee, and possibly may also have given some instruction on the same subject asked by appellant. Of this matter, however, we are not sure. The court gave no instructions of its own on the point.

Had, however, the charge been much more full and complete on this point than it was, we are of the opinion that the verdict of the jury finding that the appellant had authorized counsel to appear for him, if not wholly unsupported by the testimony, was contrary to the weight of evidence, and on this account, for the want of sufficient proof to support the verdict, a new trial should have been granted. We do not deem it proper, as there will be a new trial of the case, to discuss the evidence further than to say that the testimony in support of the verdict on this point was of a very unsatisfactory character.

We are also of the opinion that the court committed an error in not excluding the fourth cross-interrogatory and answer of the witness Gholson. This witness was asked to detail to the jury the character and reputation of his deceased partner, Mr. Hooper, for honesty, truth, veracity and fair dealing; to which he responded by passing an encomium on the character of the deceased as a man possessed of all the virtues named above. The deceased was not a witness in the case, nor a party to the suit. His reputation was not in issue. The fact that he was a person of good or bad character was not relevant to any inquiry in the case, and a proper objection being raised to the question and answer as irrelevant, the evidence should have been excluded. Gibson v. Amer. Mut. Life Ins. Co., 37 N. Y., 580; Stephen's Digest of the Law of Evidence, Little, Brown & Co.'s edition, edited by Mr. J. Wilder May, p. 111; 1 Greenl. Ev., secs. 54, 55; Sheffill v. Van Deusen, 15 Gray, 485.

If this case had been tried by the court without a jury, this ruling might have been immaterial; but in view of the fact that the verdict was manifestly against the weight of evidence, it may fairly be inferred that it was the result, in part, of the failure of the court to exclude from the consideration of the jury this irrelevant testimony. It may be possible that the jury concluded from the fact that the court refused to exclude evidence as to the character of Mr. Hooper, that his reputation and standing in the community during his lifetime was an issue on which it was their duty to pass in deciding the case, and that their finding would affect that question.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered June 8, 1883.]