### COURTLANDT BABCOCK v. E. J. MARSHALL.

Decided April 19, 1899.

**1. Foreign Judgment—Fraud as Defense—Law and Equity.**

Whether or not the cases holding fraud in obtaining a judgment in one State available as a strictly legal defense to a suit upon such judgment in another State are to be followed, such judgments are entitled to no greater faith and credit in such suit than they have by law and usage in the State where rendered (Revised Statutes United States, section 905), and are subject to the principle of equity which gives relief against them when obtained by fraud.

**2. Same.**

The owner of a judgment obtained in another State by fraudulently violating a promise to dismiss it in pursuance of an agreement for settlement, may be denied a recovery, upon principles of equity authorizing the remedy by injunction, in a suit upon such judgment in this State.

**3. Same—Foreign Law—Pleading and Proof.**

Though the laws of the State where judgment was fraudulently recovered, permitting injunction against such judgment in that forum, were not pleaded nor proved by defendant in a suit against him upon such judgment in this State, the court will take notice of such laws, being general principles of equity and not dependent upon statute, and will look to the reported decisions of that State as evidence of their recognition there.

**4. Same.**

A court trying a cause based upon a judgment of a sister State takes judicial notice, it has been held, under the Federal law requiring it to give credit to such judgment, of the laws of the State in which it was rendered.

**5. Foreign Judgment—Credit Given.**

Judgments of one State are entitled to no more respect or credit, when sought to be enforced in a sister State, than are given to its domestic judgments in the State where they are sued upon.

**6. Practice—Equitable Defenses.**

Under our blended system of law and equity a defendant may avail himself, as a defense to a suit upon a judgment, of the same facts which would have entitled him to maintain suit to enjoin its execution.

ERROR to Lampasas. Tried below before Hon. JNO. M. FURMAN.

*W. B. Abney* and *Thomas G. Frost,* for plaintiff in error.

*Matthews & Browning,* for defendant in error.

FISHER, CHIEF JUSTICE.—This is a suit by plaintiff in error against defendant in error on a judgment for $1014.57, rendered by the Circuit

Court of Cook County, Illinois, in favor of plaintiff in error against defendant in error.

For answer, the defendant in error pleaded that the judgment was procured against him by the fraudulent conduct of the plaintiff in error, in that after suit was brought in the Illinois court on the claim which was merged into the judgment, and before the judgment was obtained, defendant in error and plaintiff in error agreed upon a full settlement of the matters of litigation then pending, and the defendant in error had fully paid off and discharged the claim upon which the suit was based, and the plaintiff in error, in consideration thereof, then and there agreed to dismiss said suit and not prosecute it to judgment.

This agreement was made about the 17th of January, 1896, as the facts show, in the city of Chicago. Afterwards, about September 1, 1896, the defendant in error returned to his home in Lampasas County, Texas, and on the 3d day of September, 1896, the judgment sued upon was recovered against him. It is also alleged that the defendant in error relied upon the promise and agreement made by plaintiff in error to dismiss the action against him; and therefore he paid no further attention to the suit and made no defense thereto. That he did not know or hear of the rendition of the judgment until about October 20, 1896, when the payment of the judgment was demanded of him. The fraud here alleged is pleaded in bar of the plaintiff's right to recover on the judgment, and, in addition, the defendant asks that the plaintiff be forever restrained and enjoined from enforcing the judgment.

There are matters of cross-action and reconvention set up in the answer which it is not necessary to state, in view of the disposition we make of the case, as the defendant in error asks us to consider these questions only in the event we remand the judgment below. These matters are brought to the attention of this court only by cross-assignments of defendant in error.

Plaintiff in error addressed to the answer certain demurrers, which were overruled, and which will be more fully noticed in the opinion.

The trial court rendered judgment to the effect that plaintiff in error take nothing by his suit, and that he be forever enjoined and restrained from enforcing such judgment against defendant in error, by suit or otherwise.

There is evidence in the record which supports the averments of the answer as set out. The effect of the evidence in support of these averments, in our opinion, shows that the judgment was procured by the fraudulent conduct of the plaintiff, in violation of the agreement to dismiss the suit and that the failure to do so deprived the defendant of a meritorious defense, and that the defendant could rely upon that agreement, and that, from his want of notice that the judgment was obtained, he was not negligent in taking steps in the courts of Illinois looking to setting it aside.

It is first contended by the plaintiff in error that the court erred in

overruling his demurrers to defendant's answer, because, under section 1, article 4, of the Constitution of the United States, to the effect "that full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of other States," the judgment sued upon, rendered by the court in Illinois, was conclusive, and was not subject to attack for fraud in its procurement.

If it was an original question before us as one of first impression in this State, we would be inclined to hold that a strictly legal defense of fraud could not be urged to defeat a judgment of a sister State. Renaud v. Abbott, 116 U. S., 277. There are several cases decided by the courts of this State upon this subject, some of which directly and others inferentially hold that fraud can be interposed as a defense to the judgment of a sister State, when sued upon here. Norwood v. Cobb, 15 Texas, 501; same case. reaffirmed in 24 Texas, 554; Drinkhard v. Ingram, 21 Texas, 653; Chambers v. Gray, 51 Texas, 114; Redus v. Burnett, 59 Texas, 581; Russell v. Butler, 47 S. W. Rep., 406. As the only Texas case which is opposed to those cited, plaintiff refers us to the case of Miller v. Sorrell, 40 Southwestern Reporter, 835. That was a suit brought in this State upon a judgment rendered by a court of Florida. The court in affirming the judgment of the trial court says that there was no error in sustaining demurrers to defendant's answer, because it did not state the specific acts of fraud in obtaining the judgment sued upon. This was the first conclusion of law of that court, and a second conclusion disposes of the answer, in part, filed in the case, upon the ground that, the judgment being one of a sister State, the defendant could not, by plea in reconvention, predicate an action of damages based upon its recovery, no facts being alleged that would affect the validity in the State where rendered.

The first conclusion of the court seems to strongly intimate that if specific acts of fraud had been alleged, the answer would have been good. It is true, the Supreme Court refused a writ of error in the case, but it may have been on the first ground stated. If it were true, as there stated, that the acts constituting the fraud were not alleged, the defendant had no standing in court and the demurrer was properly sustained, for the rule is elementary that, when relief is sought on the ground that the opposite party has been guilty of fraud, the conduct or acts relied upon as constituting the fraud must be specifically alleged.

From this it seems that the only point relied upon in that case was the insufficiency of the answer to allege facts showing fraud.

If we felt constrained to follow the decisions of the courts of this State, to the effect that fraud, as a strictly legal defense, may be charged against the plaintiff to defeat a recovery in a suit based upon the judgment of a sister State, it would not be necessary that we should so declare ourselves in this case, because, in our opinion, the judgment of the trial court may be affirmed on other grounds.

In addition to the assertion of fraud in procuring the judgment, as a strictly legal defense, the defendant in error urged the same state of facts

as a basis for equitable relief against the judgment and the enforcement of the same by plaintiff in error.

It is a general principle of equity, which may be said to exist in nearly if not all of the States of the Union, that a judgment at law, which was procured by the fraudulent conduct of the plaintiff, which had the effect to deprive the defendant of a meritorious legal defense which he was not guilty of negligence in urging, may be enjoined and the plaintiff restrained from enforcing it. Embry v. Palmer, 107 U. S., 11; 2 High on Injunc., 3 ed., secs. 190-208, and cases hereafter cited.

The statute of the United States which gives effect to the provision of the Constitution that declares that full faith and credit shall be given in each State to the public records, etc., of any other State, uses this language: "And the said records and judicial proceedings, authenticated as aforesaid, shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the State whence the said records are or shall be taken." Rev. Stats. U. S., sec. 905.

In Embry v. Palmer, 107 U. S., 10, which was an action to restrain the enforcement of a judgment of the District of Columbia, when sued upon in Connecticut, on the ground of fraud in procuring the judgment, the court say: "The rule for determining what effect shall be given to such judgments is that declared by this court in respect to the faith and credit to be given to the judgments of State courts in the courts of other States in the case of McElmoyle v. Cohen, 13 Peters, 312, 326, where it is said: 'They are record evidences of a debt or judgment of record, to be contested only in such way as judgments of record may be, and consequently are conclusive upon the defendant in every State, except for such causes as would be sufficient to set aside the judgment in the courts of the State in which it was rendered.' The question then arises, what causes would have been sufficient in the District of Columbia, according to the law there in force, to have authorized its courts to set aside the judgment recovered there by Embry against Stanton & Palmer."

It is clear from this that it was not the purpose of the Constitution to give to the judgments of a State court a more conclusive effect when sought to be enforced in a sister State, than they would be entitled to in the State where rendered. And it is also clear that the existence of the general principles of equity which authorize restraining a judgment procured through fraud in the State where the judgment was originally rendered, is authority for a like procedure in the courts of a different State where it is afterwards sought to be enforced, provided the courts of the latter State are not wanting in jurisdiction to enforce such a remedy. As to the existence of such a remedy in this State, there can be no question, as illustrated in the following cases: Dickerson v. McDermott, 13 Texas, 249; Overton v. Blum, 50 Texas, 423; Byars v. Juston, 2 Ct. App. Civ. Cas., 686: Nevens v. McKee, 61 Texas, 413; Harn v. Phillips, 65 Texas, 596.

It is insisted by the plaintiff in error that the principle stated can not be given application in this case, because there was no averment in defendant's answer, nor was there evidence as to what were the laws of Illinois upon the subject. It is true, the laws of that State were not pleaded or proven, but it is not believed that the rule insisted upon applies in this case. The right to equitable relief in this instance was not based upon a statute of Illinois or any local peculiarity existing there; but as said in Embry v. Palmer, supra, "upon the broad principles of equity," which it is believed, upon this subject, prevail in possibly all the States of the Union. These general principles of equity wherever they may exist, as well as the general principles of common law, need no proof, for it is assumed that the courts which may be called upon to enforce them possess a judicial knowledge of them. But whether they are given application in a different jurisdiction, and how construed there, calls for inquiry into the practice that prevails in those courts.

Nelson v. Rockwall, 14 Illinois, 375, was a suit by injunction to restrain the enforcement of a judgment obtained by fraud, which consisted in the defendant obtaining the judgment against the petitioner after the claim on which it was based was fully paid off and discharged. The court in that case characterized that as the grossest fraud, and granted relief restraining enforcement of the judgment. This case was expressly affirmed in Foote v. Despain, 87 Illinois, 28, and the principle recognized in the recent case of Schroder v. Pettibone, 163 Illinois, 42.

If we can take these decisions, which are found in the volumes of authentic reports of cases of the Supreme Court of Illinois, as establishing anything, they clearly show that the courts of that State apply the general principles of equity relating to the subject before us when occasion requires. If this is the rule that prevails in Illinois, it is presumed to continue in force until the contrary is shown. State v. Patterson, 2 Ind., 346, same case, 38 Am. Dec., 699-703.

Wharton, in the third edition of his work on Evidence, volume 1, section 311, states the rule that is generally recognized in practice in the courts of the several States, and there are decisions of the courts of this State which recognize it. He says: "When the statute of a State has received an authentic construction by the courts of such State, such construction will be accepted extraterritorially by other courts. Hence it is that the reports of adjudicated cases in another State are always worthy of consideration as indicating the law of such State, and may be received in argument before a court as exhibiting such extraterritorial law." Kilgore v. Buckly, 14 Conn., 387.

In McDeid v. McDeid, 67 Illinois, 548, the court said: "As a general rule, the decisions of courts of justice are evidence of what is the common law. Courts have uniformly taken notice of the construction given to foreign statutes by the foreign tribunals, and to enable them to do this, they have always been in the habit of looking to the reports of such tribunals."

If it is permissible to look to the decisions of the courts of a sister

State in order to ascertain the application and construction given to statutes there, why, for the same reason, should we not be allowed to look to those decisions in order to ascertain what, if any, construction and application the courts of the sister State have given to recognized principles of the common law or of equity. In such a case, it is not for proof of the foreign law that we look to the decisions, but whether a general principle of the common law or equity, of which we take judicial knowledge, has been construed or given application in the courts of the foreign State.

Furthermore, upon this subject it has been held that a court trying a cause based upon a foreign judgment takes judicial notice of the laws of the State in which the judgment was rendered. State v. Hutchison, 27 Pa. St., 483; Henry v. Allen, 17 S. W. Rep., 515. But whether this rule applies or not to this case, we are clearly of the opinion that we can look to the reported cases decided by the Supreme Court of Illinois, in order to ascertain what application, if any, the courts there give to the general principles of equity.

In addition to the reasons given, there is another which, in our opinion, will support the judgment. The Supreme Court of the United States, in Cole v. Cunningham, 133 U. S., 112, in discussing the provision of the Constitution giving full faith and credit to the records of other States and the acts of Congress thereunder, says: "This does not prevent an inquiry into the jurisdiction of the court in which a judgment is rendered to pronounce the judgment, nor into the right of the State to exercise authority over the parties or subject matter, nor whether the judgment is founded in, and impeachable for a manifest fraud. The Constitution did not mean to confer any new power on the States, but simply to regulate the effect of their acknowledged jurisdiction over persons and things within their territory. It did not make the judgments of the States domestic judgments to all intents and purposes, but only gave a general validity, faith, and credit to them as evidence. No execution can be issued upon such judgments without a new suit in the tribunals of other States, and they enjoy, not the right of priority or privilege or lien which they have in the State where they are pronounced, but that only which the lex fori gives to them by its own laws in their character of foreign judgments." Citing several authorities, and concludes with this statement: "And other judicial proceedings can rest on no higher ground."

Now it is clear that the judgments of a sister State are entitled to no more respect or credit than is given to the domestic judgments of the State where they are afterwards sought to be enforced, and, as said from the opinion quoted, they do not carry with them the rights that flow from domestic judgments.

Equity acts upon the person, and where the owner of a domestic judgment, which was obtained by fraud in the courts of this State, seeks to enforce it, they will, in a proper case, where the complainant has not been guilty of laches, interpose their remedial relief by injunction and restrain the person guilty of the fraud from consummating his wrong; and in cases of this character, it is upon the person of the wrongdoer that equity

fastens its restraining power; and if the courts of this State have the power, which they undoubtedly have, to restrain the fraudulent owner of a domestic judgment from enforcing it, a like power could be exercised to restrain one who comes into the courts of this State and seeks to enforce the judgment of another State.

The question next arises, whether the defendant in error is entitled to this remedy, from the manner and form in which it was urged. The equitable and legal jurisdictions of the courts of this State are blended, and where the causes of action or the defenses thereto are both legal and equitable, they can be determined and adjudicated and settled in the one controversy. When the plaintiff came into the courts of this State by suit upon his judgment, he submitted himself to their jurisdiction, subject to all the rules of pleading and practice that prevail here; and these rules permit a defendant, in a controversy of this character, to plead in defense or by a cross-action, in order to prevent a recovery by the plaintiff, the same state of facts that he could have urged if he had taken the initiative by bringing suit seeking to restrain his opponent.

We find no error in the judgment, and it is affirmed.

*Affirmed.*