**DYER v. JOHNSON.   (No. 12122.)**

Court of Civil Appeals of Texas.   Fort Worth.
May 11, 1929.

Rehearing Denied June 8, 1929.

Fred T. Arnold, of Graham, and Cantey, Hanger & McMahon, Warren Scarborough, and Alfred McKnight, all of Fort Worth, for appellant.

McFarlane & McFarlane, of Graham, for appellee.

BUCK, J.   At the April term, 1918, of the circuit court of the state of Illinois, and for the county of Mercer, Fred W. Johnson, through his attorney, John M. Wilson, filed

suit against W. H. Dyer and F. M. Carpenter on two notes, one for $1,260, due nine months after November ·5, 1915, with interest at 6 per cent. per annum, and one note for $500, payable December 1, 1915, with 6 per cent. interest from date, payable semiannually, both notes being executed ·by said Dyer and Carpenter. The notes were made payable to Charles Benson, and it was alleged in the petition that Charles Benson had indorsed said notes to the plaintiff, and that thereby the defendants became liable to plaintiff for the amount of said notes, interest, attorneys' fees, etc.

Henry E. Burgess, an attorney, waived service of process and notice for the defendants, and confessed judgment in favor of plaintiff for the sum of $2,100.10 and costs of suit, and further agreed that no writ of error or appeal should be prosecuted on the judgment entered by virtue hereof, or any bill of equity filed to interfere, in any manner, with the judgment, and released for the defendants all errors that might interfere in delivering up the same or in delivering the execution therein, and consented to immediate execution on such judgment.

██ Under the laws of Illinois, judgment may be had for plaintiff on promissory notes by a confession of any attorney that the amount shown in the notes, together with interest and costs, constitutes a legal and just claim. Such attorney, appointed by the court, we presume, has authority to accept service and confess judgment. This law is what is known as the "narr and cognovit" law. "Narr" is an abbreviation of the Latin word "narratio," which means the complaint or petition; and the word "cognovit" is also a Latin word, meaning, as used in the statute, that the defendant has confessed judgment, and confessed the justice of the claim.

John Wilson, as attorney for plaintiff, made an affidavit in the case that he was acquainted with W. H. Dyer, and that Dyer acknowledged to him that his signature to the notes, and the power of attorney annexed thereto, was the genuine signature of the said W. H. Dyer. The plaintiff made an affidavit that all offsets and counterclaims had been allowed, and that the defendants Dyer and Carpenter were living, and that no part of said debt was for usurious interest, and that neither of said defendants was in the United States Army or Navy, or in any part of the United States' service; that there was then due the plaintiff from the defendants $2,100.-10, including principal, interest, and attorneys' fees.

Judgment was rendered awarding plaintiff the amount sued for. On June 18, Schriver & Schriver, of Rock Island, Ill., and Robert L. Watson, of Aledo, Ill., entered their appearance for the defendants. On the same day Schriver & Schriver, as attorneys for W. H. Dyer and F. M. Carpenter, filed their motion to vacate the judgment. In the motion it was alleged there was no consideration for the notes sued on; that the notes sued on were made and executed in connection with a certain contract, which was mutually canceled and held for naught, and said notes were by said agreement paid, and were to be returned by the payee to the maker; that plaintiff had notice and was aware of the cancellation of the contract and notes aforesaid, and was a party to said agreement, and is bound by the same; that plaintiff, Fred W. Johnson, was a party in interest and a part owner of the notes which were sued on herein at the time of the execution of the same, and was also a party to the cancellation of said notes, and ·he cannot recover on said notes for the reason that the same have been canceled and paid by him. Other allegations were contained not necessary here to mention.

In connection with the motion to vacate, W. H. Dyer filed his affidavit, in which he set ·up that certain notes aggregating more than ·$17,600 had been executed by W. H. Dyer and F. M. Carpenter in payment for certain lots owned by Charles Benson and Anton Benson, of the firm of Benson Bros., engaged in the real estate business in Chicago, and that said Dyer and Carpenter made and executed two notes, one for $1,260 and one for $500; that said two notes were given in part payment on said lots and real estate, and that subsequent thereto the said Charles Benson agreed with affiant and said Carpenter that the contract and notes heretofore mentioned should be void and have no force and effect; and that the plaintiff in the suit was a party to said agreement. The affiant further stated in said affidavit that the $500 note had been reduced, before they agreed to cancel the deal and the notes, to $150.15. Affiant further stated that on June 11, 1918, he was informed by Anton Benson that Johnson had admitted that Charles Benson had given him his personal note for $3,903.12 for the purpose of taking up the two notes upon which suit was filed. Affiant further stated that he was informed by the said Anton Benson, and believed the same to be true, that said Johnson had knowledge of the facts that said notes and contract between affiant and Carpenter on the one hand and said Benson Bros. on the other hand had been canceled and held void at or before the time he acquired same. F. M. Carpenter made an affidavit generally to the same effect.

The trial court granted the motion to vacate, and ordered both the plaintiff and the defendants to plead.

In support of defendants' motion to vacate, Anton Benson filed his affidavit, in which he stated that the contract between Dyer and Carpenter on the one hand and the Benson Bros. on the other hand had been canceled and held for naught, and the notes given in

payment of the land purchased had also by mutual agreement been canceled; that plaintiff, F. W. Johnson, was acquainted with the whole transaction, and was an agent and party thereto; that said Johnson took said notes, the note for $1,260, and the note for $500, knowing they were given as a part of said contract of purchase; and that said contract of purchase had been mutually annulled by the parties thereto.

Subsequently, and after the defendant Dyer had left Illinois and gone to Kansas, and from there to Texas, plaintiff, by H. L. Hebel and H. E. Burgess, the latter who had purported to represent the defendants in the action, filed a petition for declaration of trespass on the case, and the court rendered judgment against the defendants for $2,-100.10, being the amount due on the notes "over and above the costs in this behalf sustained or expended."

Nothing further seems to have been done with reference to this later judgment until the March term, A. D. 1928, of the district court of Young county, Tex., when plaintiff filed his original petition against Dyer and Carpenter in which he set up that he had recovered judgment on December 8, 1919, and had recovered against defendants $2,307.90, attorneys' fees $191.91, with interest, and prayed the court to have the defendants cited to appear and answer the petition. The defendant Dyer filed an answer, in which he set up substantially the facts which he had pleaded in his motion to vacate the judgment in Illinois, and further pleaded the agreement to dismiss the suit. The cause was tried on June 30, 1927, and judgment entered dismissing the case as to F. M. Carpenter, without prejudice, and judgment entered against the defendant W. H. Dyer for the full amount of the judgment theretofore rendered against him and Carpenter on December 8, 1919, in the state of Illinois.

The court found that the judgment entered in Illinois was a valid and subsisting judgment, and that plaintiff should recover against Dyer the sum of $3,576.73, with costs. The defendant has appealed.

### Opinion.

We think that the Texas authorities hold that a judgment entered by a sister state, and sued on in this state, may be set aside for fraud in the obtaining of the judgment. In Babcock v. Marshall, by the Court of Civil Appeals of Austin, opinion by Chief Justice Fisher, 21 Tex. Civ. App. 145, 50 S. W. 728, it is held that, under the Constitution of the United States, art. 4, § 1, requiring full faith and credit to be given to the judgment of a sister state, a foreign judgment of law procured by fraudulent conduct that deprives defendant of a meritorious defense which he was not guilty of negligence in urging may be enjoined where it is sought to be enforced in another state; that under said article and section of the United States Constitution the judgment of a sister state is entitled to no more credit than a domestic judgment. In the cited case a judgment rendered by the circuit court of Cook county, Ill., in favor of plaintiff and against defendant, was involved. Like in this suit, defendant pleaded and showed that the plaintiff and defendant in the original suit had agreed upon a full settlement of the notes under litigation pending in Illinois, and that the defendant had fully paid off and discharged the claim upon which suit was based, and the plaintiff thereunder in and there agreed to dismiss said suit and not to prosecute the judgment. The court said:

"There is evidence in the record which supports the averments of the answer as set out. The effect of the evidence in support of these averments, in our opinion, shows that the judgment was procured by the fraudulent conduct of plaintiff in violation of the agreement to dismiss the suit, and that the failure to do so deprived the defendant of a meritorious defense, and that the defendant could rely upon this agreement, and that from his want of notice that the judgment was obtained he was not negligent in taking steps in the courts of Illinois looking to setting it aside. It is first contended by the plaintiff in error that the court erred in overruling his demurrers to the defendant's answer, because, under section 1 of article 4 of the Constitution of the United States, to the effect 'that full faith and credit shall be given in each state to the public acts, records and judicial proceedings of other states,' the judgment sued upon, rendered by the court in Illinois, was conclusive, and was not subject to attack for fraud in its procurement. If it was an original question before us as one of first impression in this state, we would be inclined to hold that a strictly legal defense of fraud could not be urged to defeat a judgment of a sister state. Renaud v. Abbott, 116 U. S. 277, 6 S. Ct. 1194 [29 L. Ed. 629]. There are several cases decided by the courts of this state upon this subject, some of which directly, and others inferentially, hold that fraud can be interposed as a defense to the judgment of a sister state, when sued upon here. Norwood v. Cobb, 15 Tex. 501, reaffirmed in 24 Tex. 554; Drinkard v. Ingram, 21 Tex. 653 [73 Am. Dec. 250]; Chunn v. Gray, 51 Tex. 114; Redus v. Burnett, 59 Tex. 581; Russell v. Butler (Tex. Civ. App.) 47 S. W. 406. As the only Texas case which is opposed to those cited, plaintiff refers us to the case of Miller v. Lovell ([Tex.] Civ. App.) 40 S. W. 835. That was a suit brought in this state upon a judgment rendered by a court of Florida. The court, in affirming the judgment of the trial court, say that there was no error in sustaining demurrers to defendant's answer, because it did not state the specific acts of fraud in obtaining

the judgment sued upon. This was the first conclusion of law of that court, and by a second conclusion it disposed of the answer in part filed in the case upon the ground that, the judgment being one of a sister state, the defendant could not, by plea in reconvention, predicate an action of damages based upon its recovery, no facts being alleged that would affect its validity in the state where rendered. The first conclusion of the court seems to strongly intimate that, if specific acts of fraud had been alleged, the answer would have been good. It is true, the supreme court refused a writ of error in the case, but it may have been on the first ground stated. If it was true, as there stated, that the acts constituting the fraud were not alleged, the defendant had no standing in court, and the demurrer was properly sustained, for the rule is elementary that, when relief is sought on the ground that the opposite party has been guilty of fraud, the conduct or acts relied upon as constituting the fraud must be specifically alleged. From this it seems that the only point relied upon in that case was the insufficiency of the answer to allege facts showing fraud. If we felt constrained to follow the decisions of the courts of this state, to the effect that fraud as a strictly legal defense may be charged against the plaintiff to defeat a recovery in a suit based upon the judgment of a sister state, it would not be necessary that we should so declare ourselves in this case, because, in our opinion, the judgment of the trial court may be affirmed upon other grounds. In addition to the assertion of fraud in procuring the judgment as a strictly legal defense, the defendant in error urged the same state of facts as a basis for equitable relief against the judgment and the enforcement of the same by plaintiff in error. It is a general principle of equity, which may be said to exist in nearly, if not all, of the states of the Union, that a judgment at law, which was procured by the fraudulent conduct of the plaintiff, which had the effect to deprive the defendant of a meritorious legal defense which he was not guilty of negligence in urging, may be enjoined, and the plaintiff restrained from enforcing it. Embry v. Palmer, 107 U. S. 11, 2 S. Ct. 25 [27 L. Ed. 346]. 2 High, Inj. (3d Ed.) §§ 190–208, and cases hereafter cited. The statute of the United States which gives effect to the provision of the Constitution that declares that full faith and credit shall be given in each state to the public records, etc., of any other state, uses this language: 'And the said records and judicial proceedings, authenticated as aforesaid, shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the state whence the said records are or shall be taken.' Rev. St. U. S. § 905 [28 USCA § 687]. In Embry v. Palmer, 107 U. S. 10, 2 S. Ct. 31 [27 L. Ed. 346], which was an action to restrain the enforcement of a judgment of the District of Columbia, when sued upon in Connecticut, on the ground of fraud in procuring the judgment, the court say: 'The rule for determining what effect shall be given to such judgments is that declared by this court in respect to the faith and credit to be given to the judgments of state courts in the courts of other states in the case of McElmoyle v. Cohen, 13 Pet. 312, 326 [10 L. Ed. 177], where it is said: "They are record evidences of a debt or judgment of record, to be contested only in such way as judgments of record may be, and consequently are conclusive upon the defendant in every state, except for such causes as would be sufficient to set aside the judgment in the courts of the state in which it was rendered. The question then arises, what causes would have been sufficient in the District of Columbia according to the law there in force, to have authorized its courts to set aside the judgment recovered there by Embry against Stanton & Palmer?" ' It is clear from this that it was not the purpose of the Constitution to give to the judgments of a state court a more conclusive effect, when sought to be enforced in a sister state, than they would be entitled to in the state where rendered. And it is also clear that the existence of the general principles of equity which authorize restraining a judgment procured through fraud in the state where the judgment was originally rendered is authority for a like procedure in the courts of a different state where it is afterwards sought to be enforced, provided the courts of the latter state are not wanting in jurisdiction to enforce such a remedy. As to the existence of such a remedy in this state, there can be no question, as illustrated in the following cases: Dickenson v. McDermott's Ex'rs, 13 Tex. 249; Overton v. Blum, 50 Tex. 423; Byars v. Justin, 2 Willson, Civ. Cas. Ct. App. § 686; Nevins v. McKee, 61 Tex. 413; Harn v. Phelps, 65 Tex. 596."

The opinion further holds that the right of equitable relief is the same in an action on a foreign judgment as on a domestic judgment, and that the defendant in such case may plead in defense or by cross-action the same state of facts that he could have urged if he had sued to restrain his opponent.

Babcock v. Marshall is cited with approval in Strickel v. Brownfield State Bank et al. (Tex. Civ. App.) writ of error dismissed for want of jurisdiction, 257 S. W. 678, 679; also in Hare v. Reily, 269 S. W. 473, by the Dallas Court of Civil Appeals, affirmed by the Supreme Court in 280 S. W. 543; also in Robins v. Sanford, by this court, opinion by Chief Justice Conner, 1 S.W.(2d) 520, local citation on page 524. We find that in Schendel v. Chicago, M. & St. P. R. Co., 168 Minn. 152, 210 N. W. 74, the Supreme Court of Minnesota likewise cites with approval the holding in Babcock v. Marshall. See Embry

v. Palmer, 107 U. S. 3, 2 S. Ct. 25, 27 L. Ed. p. 346; Cole et al. v. Cunningham et al., 133 U. S. 107, 10 S. Ct. 269, 33 L. Ed. p. 538.

Counsel for appellee urges that, inasmuch as the defendant below set up substantially the same facts that he urged in his motion to vacate the judgment rendered by the circuit court of Mercer county of Illinois, the Illinois court doubtless construed such allegations and pleas contained in the answer of defendants Dyer and Carpenter, and that it must be presumed that the court, in rendering judgment later on the complaint and cause of action, held in effect that said alleged grounds did not constitute any defense, or, if they did, that said alleged grounds were not true. The question here involved is whether or not in consideration of the grounds alleged in the motion to vacate the judgment in the Illinois court, and subsequent to the granting of the motion to vacate, the plaintiff, either personally or through his attorney, or both, and the defendants and their attorney agreed to cancel the notes and to dismiss the cause of action. There is, in the statement of facts, not only the testimony of W. H. Dyer that such agreement was made, but the testimony of H. M. Schriver, attorney for Dyer and Carpenter in the Illinois court, shows that said judgment was agreed to be set aside and vacated, and that the suit was "dismissed" by agreement between the attorneys for plaintiff and defendant. It is true that the plaintiff, in the instant suit, testified that he did not authorize his attorney to dismiss said suit, or agree to dismiss the same, but ordinarily an attorney of record has implied authority to dismiss a suit filed if he sees fit, or to discontinue it against one or several defendants. 6 Corpus Juris, p. 646, § 151; Seeligson v. Gifford, 46 Tex. Civ. App. 566, 103 S. W. 416. Evidently the court below did not give due consideration to, or in fact consider at all, the testimony of Carpenter and Schriver that such an agreement had been made.

We are of the opinion that appellant was denied an opportunity to interpose in the Illinois court his claim of the agreement between him and his attorney on the one hand and the attorney of appellee here, if not of Johnson himself, on the other hand, to have the suit in Illinois dismissed because an adjustment and settlement had been made, and return to Dyer and Carpenter the notes sued on in Illinois. Judgment was recovered there; such judgment being the basis of the suit in Texas. Appellee testified in the instant case that, although the judgment had been obtained some eight or nine years prior to the suit in Texas, he had not notified Dyer or Carpenter of such judgment, because he did not want them to try to cover up their assets. Dyer testified that he knew nothing of the judgment having been obtained, or of the failure to dismiss said suit in Illinois,

until suit was filed against him in Young county.

We think the judgment below should be reversed and the cause remanded, and it is so ordered.

On Appellee's Motion for Rehearing.

Appellee has filed a vigorous and somewhat lengthy motion for rehearing, in which he calls our attention to a statement in our original opinion that the Illinois circuit court, after granting defendant's motion for a new trial, ordered defendant and plaintiff to plead. It appears that only defendant was ordered to plead. We correct this statement in the interest of accuracy, and not because we believe it affects materially our judgment.

After a careful reconsideration of the questions involved in this appeal, we do not find ourselves able to disturb the judgment heretofore rendered by this court.

The evidence shows that in a letter of Johnson's, written January 11, 1918, to Anton Benson, 412 Harris Trust building, Chicago, Ill., Johnson said:

"The two Dyer notes consisting of $1,260.00 and the balance on the $500 note now being $150.15, I believe that I stated to you before that on last July 9, your brother Charles gave me a new note of $3,903.12 in full settlement to that date including the above described notes and the accrued interest to date, and what equity I had in a lot in Brookfield."

Johnson testified in the trial in Texas in the case by deposition, and, although asked about this letter, he never denied writing it, and never denied that he wrote that the $500 note had been reduced, by payment or otherwise, to $150.15. He did say that the settlement mentioned in this letter by Charles Benson's giving him a new note for $3,903.12 in full settlement of the two Dyer notes sued on had never been consummated; that Benson agreed to give him a lien on some property, and had not done so. The judgment obtained in Illinois and sued on in Texas was for the full amount of the two notes alleged to have been executed by Dyer and Carpenter, with no allowance for any payments on the $500 note.

In Rea v. Forrest, 88 Ill. 275, 276, the Supreme Court of Illinois said, quoting from the headnotes:

"Where the payee of a note more than reimburses himself from a note assigned to him by the maker as collateral security, and retains the collateral, he will not be entitled to enforce payment of the principal note thus paid; and if he takes a judgment thereon, under a power of attorney attached thereto, without the knowledge or consent of the maker, it will be fraudulent and void."

In First National Bank of Danville v. Cunningham, a suit to enforce in Kentucky a judgment alleged theretofore to have been obtained in Illinois, opinion by Circuit Court,

48 F. 510, it is said, quoting from the head-notes:

"1. Judgment on Confession—Validity—Fraud.

"A warrant of attorney contained in a note to confess judgment thereon remains in force only so long as the note is unpaid; and where the payee, after receiving satisfaction thereof, fraudulently conceals the fact, and procures an attorney to appear and confess judgment without the maker's knowledge or consent, such appearance confers no jurisdiction on the court, and the judgment is void.

"2. Same—Motion to Vacate—Collateral Attack.

"Where a judgment has been fraudulently obtained in the absence of the defendant, the fact that he subsequently moves to vacate the same and afterwards withdraws his motion by leave of court, does not constitute an appearance to the action such as will render the judgment valid, and he may still impeach it in a collateral suit.

"3. Judgment of Another State—Collateral Attack—Constitutional Law.

"The provision of the federal constitution that full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state gives to a judgment rendered in another state only such credit as it is entitled to in that state; and, if it may there be collaterally attacked for want of jurisdiction in the court rendering it, it may be so attacked in any other state.

"4. Action on Foreign Judgment—Fraud.

"In a suit brought upon a judgment rendered in another state upon the appearance and confession of an attorney under a warrant contained in the note sued on, the defendant may show that the judgment was fraudulent and void by reason of the fact that the warrant of attorney had expired by previous payment of the note."

We have concluded that we heretofore correctly disposed of the questions involved in the appeal.

The motion for rehearing is overruled.