**Ronald Edward RODGERS, Appellant,**

v.

**Lauretta WILLIAMSON and William F. Williamson, Appellees.**

**No. 17889.**

Court of Civil Appeals of Texas, Dallas.

May 18, 1972.

Rehearing Denied June 15, 1972.

Michael A. Robertson, Grand Prairie, for appellant.

R. Lewis Nicholson, Dallas, for appellees.

CLAUDE WILLIAMS, Justice.

The principal question presented by this appeal is the validity of appellant's collateral attack upon a judgment of adoption rendered by an Illinois court. The Juvenile Court of Dallas County gave full faith and credit to the Illinois decree and denied appellant's prayer for relief. We affirm.

In 1965 Ronald Edward Rodgers and his then wife Lauretta Rodgers were divorced in the 99th District Court of Lubbock County, Texas. The decree of divorce awarded custody of the only minor child of the parties, Randall Scott Rodgers, age two years at that time, to his natural mother.

Thereafter Lauretta Rodgers married William F. Williamson and the family moved to Chicago, Illinois. In 1969 William F. Williamson and his wife Lauretta filed a petition in the Circuit Court of Cook County, Illinois to adopt Randall Scott Rodgers, then age six. Appellant Rodgers received notice of the petition and went to Chicago and employed an attorney of his own choice to represent him at the hearing. After conferring with appellees and with his own counsel, appellant Rodgers entered into a written stipulation in which he gave his consent to the adoption of the child by Mr. and Mrs. Williamson. The stipulation also provided that Rodgers should have the right of visitation with the minor at specified times. Thereafter the Illinois court entered the decree of adoption in which the court recited that it had jurisdiction of the parties and subject matter and that the father had consented to the adoption in accordance with the Illinois law. The stipulation signed by the father was attached to the decree and made a part thereof. The material part of the decree was as follows:

"IT IS THEREFORE ORDERED, ADJUDGED and DECREED, that from this date, RANDALL SCOTT RODGERS, a minor, shall be to all legal intents and purposes, the child of the Petioners, WILLIAM F. WILLIAMSON and LAURETTA WILLIAMSON, his wife; and for the purposes of inheritance and all other legal incidents and consequences, shall be the same as if he had been born to the petitioners in lawful wedlock.

"IT IS FURTHER ORDERED that the name of the said minor shall be changed to RANDALL SCOTT WILLIAMSON."

Following the entry of this decree in the Illinois court on August 7, 1969, and until April 15, 1971, the stipulation with reference to visitation rights on the part of ap-

pellant was carried out. On April 15, 1971 appellant Rodgers filed his original action in the Juvenile Court of Dallas County, Texas in which he recited the Illinois decree of adoption and requested the Juvenile Court of Dallas County to alter and modify the visitation dates which had been previously agreed to and incorporated in the Illinois decree.

In this petition appellant recited that conditions had changed since the Illinois order and that he and appellees, with the boy, now live in close proximity to each other in Texas.

Appellees filed a plea in abatement, answer and cross-action in which they took the position that since the original divorce was granted by the 99th District Court of Lubbock County, Texas, and that by virtue of Article 4639a, Vernon's Tex.Rev.Civ. Stat.Ann., the exclusive jurisdiction to alter visitation privileges was vested in the District Court of Lubbock County, Texas, or alternatively, with the Circuit Court of Cook County, Illinois, the court that rendered the decree of adoption. Appellees also alleged that the Illinois decree of adoption was entitled to full faith and credit by the Texas court and that the court should render a declaratory judgment holding that appellant Rodgers has no legal right or obligation to the minor child.

Thereafter appellant filed his second amended original petition in the juvenile court in which he, in addition to re-urging his previous pleadings, added an alternative ground as a basis for requesting the court to modify the custody award of the child. In this alternative plea appellant charged that the decree of the Illinois court should be disregarded and declared to be of no force and effect because same was wholly void and that said invalidity appears on the face of the judgment itself. Appellant pled that the Illinois decree was void because it was induced and procured by fraud in that his consent to the adoption was obtained upon the representations of appellees and their attorney that appellant

would retain his right of visitation with his son.

The court, sitting without a jury, heard the evidence presented and rendered final judgment holding that the Illinois decree granting adoption should be and is given full faith and credit and that Rodgers' motion to change visitation rights should be denied.

At the request of appellant the trial court made and filed findings of fact and conclusions of law. The court found, inter alia, that Rodgers had executed the consent to the adoption voluntarily and upon the advice of his own attorney and that such consent to adoption was not procured by fraud. The court concluded (1) that the Illinois court had jurisdiction of the parties and subject matter of the petition to adopt the minor; (2) that the decree of adoption is entitled to full faith and credit; (3) that such decree of adoption terminated all parental rights of a natural father; and (4) that the agreement for visitation is not enforceable.

While appellant asserts eight points of error in his attack upon the judgment rendered he candidly concedes in his "Summary of Argument" that: "There is no question about the events which preceded the Illinois Decree. The sole point at issue is the legal force and affect [sic] of that foreign judgment." In the same argument he says: "Appellant hesitates to attack the entire Illinois Decree as void, but he is left no choice in the face of the trial court's refusal to enforce his right of visitation. * * * It seems clear from the cases which will be discussed that the Illinois judgment is void from the beginning, and that Appellant is entitled to an adjudication as to the proper schedule of visitation under the changed circumstances."

Several of appellant's points are not briefed. From the brief itself we conclude that appellant's real contention is that there is either no evidence, or the evidence is wholly insufficient, to support the trial court's finding that appellant's consent to

the adoption in the Illinois court was not procured by fraud. This court, as was the trial court, is confronted with the primary question of the force and effect Texas courts will give to a final decree of a sister state.

Several basic rules of law must be noticed:

■ (1) Pursuant to Article 4, Section 1, of the Constitution of the United States, a state must give the final judgment of a sister state the same force and effect as it is entitled to in the state in which it is rendered. Barber v. Barber, 323 U.S. 77, 65 S.Ct. 137, 89 L.Ed. 82 (1944); Commonwealth of Massachusetts v. Davis, 140 Tex. 398, 168 S.W.2d 216 (1942); and Carter v. G & L Tool Company of Utah, Inc., 428 S.W.2d 677 (Tex.Civ.App., San Antonio 1968).

■ (2) When a sister state judgment is challenged in Texas, and the attack is collateral as in this case, in order for the attack to be successful the judgment must be void. 34 Tex.Jur.2d § 385, p. 408, and cases there cited.

■ (3) A judgment of a competent court of jurisdiction cannot be collaterally impeached unless the record affirmatively shows the want of jurisdiction of the court rendering the judgment. Williams v. Hays, 77 Tex. 283, 13 S.W. 1029 (1890); Holmes v. Buckner, 67 Tex. 107, 2 S.W. 452 (1886); Mitchell v. San Antonio Public Service Co., 35 S.W.2d 140 (Tex.Com. App.1931); and 34 Tex.Jur.2d § 344, p. 350.

■ (4) A judgment of a sister state may be attacked collaterally for fraud where the fraud went to the jurisdiction of the court, that is, where it operated to prevent the complaining party from asserting his case. 34 Tex.Jur.2d § 387, pp. 411–412; Stumberg, Principles of Conflict of Laws, 3d Ed. p. 114 (1963); Drinkard v. Ingram, 21 Tex. 650 (1858); Babcock v. Marshall, 21 Tex.Civ.App. 145, 50 S.W.

728 (1899); Hare v. Reily, 269 S.W. 473 (Tex.Civ.App., Dallas 1925, affirmed Com. App., 280 S.W. 543 (1926)); Ogletree v. Crates, 359 S.W.2d 54 (Tex.Civ.App., Eastland 1962); Marsh v. Millward, 381 S.W.2d 110 (Tex.Civ.App., Austin 1964, writ ref'd n. r. e.); Cole v. Cunningham, 133 U.S. 107, 10 S.Ct. 269, 33 L.Ed. 538 (1889); Freeman on Judgments, 5th Ed., § 1183 (1925); and 55 A.L.R.2d 673, 680.

■ (5) Where fraud in procuring the sister state judgment is alleged, the averments and proof must be clear, specific, and definite tending to establish the fraud. 34 Tex.Jur.2d § 388, p. 413. The judgment of the foreign state is entitled to every presumption of its validity. It will be presumed that the judgment is valid and subsisting in the absence of clear and convincing proof to the contrary. 34 Tex.Jur.2d § 383, p. 405.

■ We turn now to the record in this case and review the same in the light of these rules. It is undisputed that the court in Illinois acquired jurisdiction of both the parties and the subject matter of the adoption proceedings. Appellant-father was notified of the adoption petition, he employed an attorney of his own choice to represent him in the proceedings, he subjected himself to the jurisdiction of the Illinois court, and, acting upon the advice of his own attorney, he executed the consent to adoption. The only remaining question is whether the jurisdiction of the Illinois court was obtained by fraud or that the judgment of the Illinois court was tainted with fraud.

The only allegations of appellant concerning fraud are that: " * * * his consent is void under Texas and Illinois law because it was induced and procured by fraud, to-wit: the representations of the Respondents and their attorney that Petitioner would retain his right of visitation with his son; that the fraud as to Petitioner's retention of visitation rights appears on the face of the Decree * * *."

Appellant's own testimony is quite clear and revealing on the issue of alleged fraud in the procuring of his consent:

"Q Mr. Rodgers, you were aware that an action for adoption had been filed in Illinois by your former wife and her second husband, is that correct?

A Yes.

Q And you did retain counsel and in person go to Chicago?

A Yes.

Q To Cook County?

A Yes, sir.

Q And you did participate in that action in the sense of asking your lawyer to file an appropriate paper and you appeared at a deposition, is that correct?

A Yes.

Q There was no question in your mind at the time that they were asking to adopt your son?

A No.

Q All right. At the time you signed the instrument that is marked Plaintiff's Exhibit No. 1, whether you referred to it as an order or a stipulation, you understood that your son was being adopted by William Frank Williamson, is that correct?

A Yes.

Q You understood that his name would be changed as a result of this?

A Yes.

Q You understood that a new birth certificate would be issued?

A Yes.

Q You understood that he would refer to Mr. Williamson as daddy, or as his father, is this correct?

A Yes.

Q Since that time you have had visitation with your son, is that correct?

A Yes.

Q During the visitations you have had, what was your relationship with your son, did he call you daddy?

A No, he didn't.

Q Did you tell him that you were his father?

A No, I didn't.

Q What was your relationship; were you a friend, an uncle, or some such?

A He considered me to be his uncle.

Q Your son, Scott, considered you to be his uncle?

A Yes.

Q At all times did he consider Mr. Williamson to be his father?

A Yes."

*     *     *     *     *     *

"Q You stated on direct testimony that you signed this instrument marked Plaintiff's Exhibit No. 1 as—or upon advise of your counsel, is this correct?

A That is correct."

In our opinion the above quoted testimony from appellant himself is sufficient to negate the question of fraud alleged in the procurement of the consent and the entry of the adoption decree.

The case is not similar in any respect to People ex rel. Karr v. Weihe, et al., 30 Ill. App.2d 361, 174 N.E.2d 897 (1961), which is relied upon by appellant. In that case the mother attacking the adoption decree was shown to be young and inexperienced. She was not represented by competent counsel and it was clearly demonstrated that the representations made to her were false and known to be false by the adverse parties to the proceedings.

Neither can it be said that the Illinois judgment may be impeached by showing

that the judgment was obtained in violation of an agreement between the parties. The parties in this case did agree that appellant-father might visit the child from time to time, such agreement being purely personal as between the parties and not in accordance with any demands or requisites of either the Illinois or the Texas law relating to adoptions. The agreement between the parties was entirely separate and distinct from the basic laws of adoption. The Supreme Court of Illinois in People ex rel. Bachleda v. Dean, 268 N.E.2d 11 (1971), pointed out that the adoption statute of Illinois (Ill.Rev.Stat.1969, ch. 4, par. 9.1–17), provides in part that upon the entry of a decree of adoption, the natural parents of the child shall be relieved of all parental responsibility for such child and also shall be deprived of all legal rights as respects the child. While the case involved the question of the right of grandparents to visit an adopted child, the court said:

"Naturally, it follows that if an adoption decree divests a natural parent of his rights with respect to the child, it likewise divests a grandparent of any such rights."

The law is the same in Texas. Article 46a, Sec. 9, V.A.C.S.; Smith v. Painter, 408 S.W.2d 785 (Tex.Civ.App., Eastland 1966, writ ref'd n.r.e. with written opinion, Tex., 412 S.W.2d 28 (1967)).

■ We know of no Texas statutes or decisions which confer upon divorce or juvenile courts continuing jurisdiction to decide or pass upon questions of visitation or custody in cases where the parent-child relationship has been terminated by a valid decree of adoption. In such cases the jurisdiction of the divorce court is terminated. Lewis' Adoption, 380 P.2d 697 (Okl.Sup. 1963); Hardesty's Adoption, 150 Kan. 271, 92 P.2d 49 (1939). Our Texas statute, Art. 46a, Sec. 7, specifically provides that a court of competent jurisdiction may assume jurisdiction to take away from the adoptive parent the custody of the adopted child but only upon proof of the bad moral character

of such adoptive parent, or upon proof of abuse, neglect or ill treatment of such adopted child by the adoptive parent. We find no allegations in the pleadings nor evidence admitted before the trial court which would justify the implementation of the statute just quoted.

We have carefully examined all of appellant's points of error and finding the same to be without merit they are overruled.

The judgment of the trial court is affirmed.