**CITY OF SAN BENITO,
et al., Petitioners,**

**v.**

**RIO GRANDE VALLEY GAS COMPANY, and Southern Union Company
d/b/a Southern Union Gas Company,
Respondents.**

No. 02–0038.

Supreme Court of Texas.

Argued Jan. 8, 2003.

Decided June 26, 2003.

Adam Poncio, Law Offices of Cerda & Poncio, San Antonio, Ramon Garcia, Law Offices of Ramon Garcia, Edinburg, for petitioners.

Benjamin L. Hall, III, Elizabeth B. Hawkins, Sheryl A. Scott, The Hall Law Firm, John M. O'Quinn, O'Quinn & Laminack, Houston, Juan R. Molina, Law Office of Juan R. Molina, Weslaco, Christina Carlson Dodds, Daniel W. Bishop, II, Watson Bishop London & Galow, E. Lee Parsley, E. Lee Parsley, P.C., Austin, Jerry K. Clements, Cynthia Keely Timms, Kirsten M. Castaneda, Locke Liddell & Sapp LLP, Dallas, for respondents.

Chief Justice PHILLIPS delivered the opinion of the Court.

This class action was brought on behalf of an alleged class of eighty south Texas cities for recovery of franchise fees allegedly owed to them. A number of Texas cities, including the petitioners herein, tried to opt out of the class. Some were successful, but the trial court denied the requests of the seven cities petitioning here and signed a final judgment approving settlement. We must decide whether an unnamed class member must intervene in the trial court in order to appeal its overruled objections to a class settlement and whether a city must hold an open meeting to authorize its attorney to opt out of a class action. The court of appeals denied appellate relief because the cities failed to intervene in the trial court and also denied mandamus relief because the trial court did not abuse its discretion in refusing the cities' requests to opt out. 63 S.W.3d 19. We conclude that an unnamed class member is not required to intervene in order to appeal its objections to·a class settlement or its opt-out requests. Thus, the cities are parties for purposes of this appeal. We further conclude that the cities could authorize their attorneys to opt out of the litigation without formal action in an open meeting. Accordingly, we reverse the court of appeals' judgment and render judgment that six cities successfully opted out of the class and one did not. Because these issues are dispositive, we do not reach the remaining issue of whether the settlement was fair.

I

The cities of Mercedes and Weslaco are the named class representatives in a class

action for franchise fees against Rio Grande Valley Gas Company and its successor in interest, Southern Union Gas Company (hereinafter collectively referred to as "the gas companies"). The trial court defined the class as follows:

All Texas municipal corporations, municipalities, cities, towns, or villages (hereinafter referred to as "municipalities"), excluding the cities of Edinburg and McAllen, that have, or have had, existing or expired municipal franchise fee ordinances or agreements with Rio Grande Valley Gas Company or Southern Union Gas Company (hereinafter referred to collectively as the "LDC") and where the municipalities were entitled to a franchise fee or payment based on a percentage of the LDC's gross income derived from natural gas sales, and where there has not been the execution of any effective releases of the entire claims alleged in this litigation.

The trial court authorized class notices to the 80 cities that fell within this definition on June 24, 1996, providing an opt-out deadline of August 1, 1996, barely five weeks later.

Before receiving notice, the cities of San Benito, Palmview, Alton, La Villa, Port Isabel, and Edcouch (hereinafter "the six cities") each contracted with Texas Municipal Technical Consultants, Inc. ("TMTCI") to determine if franchise fees were owed by the gas companies. Under these contracts, TMTCI had authority to "audit[ ] and make[ ] a determination that uncollected compensation is due and owing to cit[ies]" and to "employ legal counsel of its choice ... to represent cit[ies] in enforcing any claim through necessary litigation." TMTCI hired Ramon Garcia of Edinburg to represent each of the cities. After the cities received the class notice, Garcia filed opt-out notices on their behalf before the August opt-out deadline.

After the August deadline, the cities of San Benito, Alton, Palmview, and La Villa ratified attorney Garcia's actions in open meetings. The cities of Edcouch and Port Isabel never ratified the opt-out requests in an open meeting. After a hearing some months later, the trial court ruled that none of the petitioner cities had properly opted out.

On December 14, 2000, class counsel sent notice of a proposed class settlement, providing that the class members could file written objections to the settlement by January 31, 2001. The six cities filed a joint motion objecting to the settlement and a joint motion to reconsider their opt-out requests. The trial court held a settlement fairness hearing after which it approved the class settlement and rendered final judgment.

Class counsel filed a motion to withdraw as counsel for the city of Pharr, stating at the hearing on the opt-out requests that Pharr had hired Ramon Garcia to represent its interests. However, nothing in the record reflects that Pharr filed an opt-out notice at any time or raised any objection to the settlement.

All seven cities appealed to the court of appeals and sought mandamus relief from both the court of appeals and this Court.[1]

1. Additionally, the cities of Alamo, LaJoya, Primera, Santa Rosa, San Juan, Penitas, and Elsa joined the petitions for writ of mandamus and the appeal to the court of appeals. The city of Elsa did not join the petition for review to this Court. Rio Grande moved to dismiss the petitions of Alamo, LaJoya, Primera, and Santa Rosa because they accepted the benefits of the trial court's judgment, of Donna and San Juan because the court of appeals' judgment gives these cities the relief they requested, and of Penitas because it is not a member of the class. The cities did not oppose this motion; therefore, we granted Rio Grande's motion to dismiss these petitions.

We dismissed the petition for writ of mandamus. The court of appeals considered both the appeal and mandamus in a consolidated opinion.

The court of appeals dismissed the appeal for want of jurisdiction, 63 S.W.3d at 24–25, and also denied mandamus relief. *Id.* at 30–31. It held that the trial court did not abuse its discretion in refusing the opt-out requests, because the requests of the six cities had not previously been authorized in an open meeting, the subsequent ratifications were ineffective, and the city of Pharr had made no attempt to opt out. *Id.*

## II

■ We must first decide if the court of appeals had jurisdiction to hear this appeal. The court below held that because the cities failed to intervene formally in the trial court, they lacked standing to appeal the trial court's judgment. 63 S.W.3d at 24–25. Thus, it dismissed the case for lack of subject matter jurisdiction. *Id.* After the court of appeals' decision was issued, the United States Supreme Court held in *Devlin v. Scardelletti*, 536 U.S. 1, 122 S.Ct. 2005, 153 L.Ed.2d 27 (2002), that unnamed class members are not required to intervene in order to appeal a trial court's judgment approving a class settlement. We follow the Supreme Court's decision in *Devlin.*

In *Devlin*, an unnamed class member objected to the class settlement at the fairness hearing, but did not successfully intervene in the proceedings. *Id.* at 8–9, 122 S.Ct. 2005. The Supreme Court held that an unnamed class member's failure to intervene does not implicate standing. *Id.* at 6, 122 S.Ct. 2005. Rather, it concluded that the real issue is whether or not the class member is a "party" for purposes of appeal. *Id.* at 7, 122 S.Ct. 2005.

The Supreme Court observed that the right to appeal is not restricted to a case's named parties. *Id.* at 12, 122 S.Ct. 2005 (citing *Blossom v. Milwaukee & Chicago R.R.*, 1 Wall. 655, 68 U.S. 655, 17 L.Ed. 673 (1864); *Hinckley v. Gilman, Clinton, & Springfield R.R.*, 94 U.S. 467, 24 L.Ed. 166 (1877); *United States Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 76, 108 S.Ct. 2268, 101 L.Ed.2d 69 (1988)). The "label 'party' does not indicate an absolute characteristic, but rather a conclusion about the applicability of various procedural rules that may differ based on context." *Id.* at 10, 122 S.Ct. 2005. Thus, the procedural rules governing class actions sometimes require unnamed parties to be treated as parties or nonparties in order to ease the administration of class litigation. The Court listed as an example the treatment of unnamed class members as parties for statute of limitations purposes but as nonparties for diversity purposes. *Id.* However, the most important consideration was that the unnamed class members would be bound by the class settlement. *Id.* Thus, noted the Court:

> [i]t is this feature of class action litigation that requires that class members be allowed to appeal the approval of a settlement when they have objected at the fairness hearing. To hold otherwise would deprive nonnamed class members of the power to preserve their own interests in a settlement that will ultimately bind them, despite their expressed objections before the trial court.

*Id.* The unnamed class member in *Devlin* was a "party" for purposes of the appeal.

■ Under Texas jurisprudence, an appeal can generally only be brought by a named party to the suit. *Motor Vehicle Bd. of the Tex. Dep't of Transp. v. El Paso Indep. Auto. Dealers Ass'n*, 1 S.W.3d 108, 110 (Tex.1999). However, the doctrine of

virtual representation is an exception to the general rule. *Id.* (citing *Gunn v. Cavanaugh*, 391 S.W.2d 723, 725 (Tex.1965)). An appellant is a deemed party under virtual representation when: "(1) it is bound by the judgment; (2) its privity of estate, title, or interest appears from the record; and (3) there is an identity of interest between the appellant and a party to the judgment." *Id.* We have deemed unnamed class members to be parties under this doctrine. *See Robertson v. Blackwell Zinc Co.*, 390 S.W.2d 472, 472 (Tex. 1965).[2] Our virtual representation doctrine is thus quite similar to the United States Supreme Court's rule in *Devlin*. We agree with the Court's analysis that the most important consideration is whether the appellant is bound by the judgment. *See Grohn v. Marquardt*, 487 S.W.2d 214, 217 (Tex.Civ.App.-San Antonio 1972, writ ref'd n.r.e.) ("When a non-party is allowed to challenge a judgment, the decision to allow him the right to appeal is grounded on the fact that, because of the doctrine of representation, he is bound by the judgment."). Because the unnamed class members here would be bound to the judgment approving the settlement, they should be considered "parties" for purposes of appeal.

The gas companies attempt to distinguish *Devlin* on the basis that the cities here were certified as a class prior to settlement, whereas *Devlin* involved a settlement class. *See Northrup v. Southwestern Bell Tel. Co.*, 72 S.W.3d 1, 10 (Tex. App.-Corpus Christi 2001, pet. denied) (stating that "imposition of the intervention requirement is appropriate in non-settlement class actions"). Because unnamed class members do not have the opportunity to challenge the certification of the class prior to final judgment approving a settlement, the gas companies agree that intervention should not be required for a settlement class. However, in a non-settlement class, unnamed parties have an opportunity to intervene, they point out. Why should unnamed class members be allowed to wait until the eve of settlement before voicing objections?

We do not find this distinction dispositive. It is not "laying behind the log" to wait to object until the fairness hearing. The very purpose of settlement notice to class members is to allow each of them to determine whether to object at the fairness hearing. *See Gen. Motors Corp. v. Bloyed*, 916 S.W.2d 949, 958 (Tex.1996). Requiring intervention prior to the settlement fairness hearing creates more work for all involved with no corresponding benefit. *See Devlin*, 536 U.S. at 14, 122 S.Ct. 2005 ("As such determinations still would most likely lead to an appeal, such a requirement would only add an additional layer of complexity before the appeal of the settlement approval may finally be heard."). As one commentator has observed, intervention

> produces more work for the district court (a formal motion in addition to the settlement hearing), no savings of time for the appellate court (in both cases it has conducted an appeal), and results in no review of the much more basic issue (the fairness and reasonableness of the settlement) by either court.

---

**2.** Although *Robertson* was a writ of error proceeding, now called a restricted appeal under Texas Rule of Appellate Procedure 30, we see no reason why an unnamed class member should be allowed to seek a restricted appeal but not prosecute an ordinary appeal. *Gunn v. Cavanaugh*, 391 S.W.2d 723, 724 (Tex. 1965) ("Writ of error affords a review of the same scope as an appeal."). We therefore disapprove of the holding to the contrary in *San Juan 1990–A, L.P. v. Meridian Oil Inc.*, 951 S.W.2d 159, 163 (Tex.App.-Houston [14th Dist.] 1997, pet. denied).

Timothy A. Duffy, Comment, *The Appealability of Class Action Settlements by Unnamed Parties*, 60 U. Chi. L.Rev. 933, 954 (1993).

The gas companies further argue that class actions will become unmanageable and unproductive if each member can individually appeal a judgment without first intervening in the action. We are not persuaded. To preserve a complaint for appellate review, a party must complain in the trial court. *See* Tex.R.App. P. 33.1(a)(1)(A). This requirement will significantly reduce the number of appeals by unnamed class members. *Devlin*, 536 U.S. at 19, 122 S.Ct. 2005. "As the longstanding practice of allowing nonnamed class members to object at the fairness hearing demonstrates, the burden of considering the claims of this subset of class members is not onerous." *Id.* Thus, class actions will not become unmanageable if unnamed class members are allowed to appeal without prior intervention.

■ Finally, a class member who wishes to opt out should not be forced to take the inconsistent action of becoming a formal member of the class in order to preserve a right to appellate review. Requiring a timely request to opt out is sufficient notice to the trial court to preserve a complaint for appellate review. Unnamed class members whose requests to opt out of a class action are denied should also be considered parties on appeal.

■ Because the six cities filed requests to opt out and objected to the settlement, their complaints were preserved for review by the court of appeals, and these unnamed class members are parties for purposes of appeal. However, the city of Pharr did not request to opt out of the class or object to the settlement. Therefore, its complaints were not properly before the court of appeals, and this Court

will not consider them. Tex.R.App. P. 33.1(a)(1)(A).

III

■ The gas companies next argue that the six cities waived their complaints regarding the denial of the opt-out requests because they failed to seek appellate or mandamus review until after final judgment. The trial court heard the opt-out requests in November 1999, and the requests were denied on February 1, 2000. A year later, the cities filed objections to the proposed class settlement and renewed their requests to opt out. When the requests were again denied and final judgment was rendered, the cities sought appellate and mandamus relief in the court of appeals and mandamus relief from this Court. However, after the court of appeals denied mandamus relief, the cities failed to inform this Court of the court of appeals' ruling. When the cities did not actively pursue their mandamus relief in this Court, we dismissed their petition. *In re City of San Benito*, 45 Tex. Sup.Ct. J. 305, 309 (Jan. 12, 2002). The gas companies argue that by waiting a year to seek appellate review and by failing to reurge their petition for mandamus relief in this Court, the cities waived their right to complain of the trial court's order denying the opt-out requests.

■ We disagree. There is no interlocutory appeal from an order denying a party the right to opt out of a class. *See* Tex. Civ. Prac. & Rem.Code § 51.014. It is true that the cities could have attempted to seek mandamus relief in this Court after the court of appeals denied mandamus relief, but filing a request for an extraordinary writ is not a prerequisite to an appeal. *Pope v. Stephenson*, 787 S.W.2d 953, 954 (Tex.1990). The cities did not waive their complaints regarding the opt-out requests.

## IV

■■■ Although the court of appeals dismissed the appeal for want of jurisdiction and considered the validity of the opt-out requests in connection with the petition for writ of mandamus below, we will consider the latter issue here as part of this appeal rather than remand to the court of appeals for it to reiterate its holding. *See* Tex.R.App. P. 53.4; *Pub. Util. Comm'n of Tex. v. City Pub. Serv. Bd. of San Antonio,* 53 S.W.3d 310, 321 (Tex. 2001). The court of appeals in the mandamus proceeding below determined that the trial court did not abuse its discretion in denying the opt-out requests. The standard of review on appeal should also be whether the trial court abused its discretion. *See In re PaineWebber Ltd. P'ships Litig.,* 147 F.3d 132, 135 (2d Cir.1998). The test for abuse of discretion is "whether the court acted without reference to any guiding rules and principles" or, stated another way, whether its decision was arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex.1985).

The gas companies claim the 1996 opt-out requests by the six cities were ineffective because the cities did not take formal action at an open meeting to authorize their attorney to file the opt-out requests. The cities respond that their attorney was authorized to file the opt-out requests as part of his representation pursuant to the TMTCI contract.

■■■ The Open Meetings Act requires that "[e]very regular, special, or called meeting of a governmental body shall be open to the public, except as provided by this chapter." Tex. Gov't Code § 551.002. It defines "meeting" as "a deliberation between a quorum of a governmental body, or between a quorum of a governmental body and another person, during which public business or public policy over which the governmental body has supervision or control is discussed or considered or during which the governmental body takes formal action." *Id.* § 551.001(4)(A). Cities can express and bind themselves only by way of a duly assembled meeting. *Cent. Power & Light Co. v. City of San Juan,* 962 S.W.2d 602, 612 (Tex.App.-Corpus Christi 1998, pet. dism'd w.o.j.). "A city's governing body may not delegate the right to make decisions affecting the transaction of city business." *Id.* at 613. However, cities may "delegate to others the right to perform acts and duties necessary to the transaction of the city's business, but can do so only by resolution or ordinance, by a majority vote." *Id.*

■■■ In their respective contracts, the six cities delegated to TMTCI the right to investigate and pursue claims they might have against the gas companies, including the right to hire counsel for those purposes. Pursuant to the contract, TMTCI hired Ramon Garcia. Each contract contained nearly identical clauses stating:

> After auditing and making a determination that uncollected compensation is due and owing to city, TMTCI will negotiate with franchisees so as to recover uncollected compensation, if any, and if necessary, employ legal counsel to recover such compensation.
>
> . . .
>
> If, after good faith attempts to negotiate with a franchisee, TMTCI is not able to resolve an uncollected compensation dispute with such franchisee or to obtain access to the books and records of franchisee as outlined ... above, or otherwise deems it necessary in order to fulfill its obligations under this Agreement, TMTCI, after having consulted with city, shall have the power and right to employ legal counsel of its choice.

Although the record does not contain the minutes of the open meetings at which these contracts were approved, neither the validity of these contracts nor Ramon Garcia's status as the cities' attorney has been challenged. Class counsel stated at oral argument that a motion to show authority was filed in the trial court, but nothing in the record indicates that such a motion was filed or that the trial court made any ruling thereon. Thus, we must assume that Ramon Garcia is the cities' attorney. *Victory v. State*, 138 Tex. 285, 158 S.W.2d 760, 766 (1942) (holding challenge to attorney's authority under precursor to Texas Rule of Civil Procedure 12 may not be raised for the first time on appeal); *Taylor v. Tex. Dep't of Pub. Welfare*, 549 S.W.2d 422, 425 (Tex.Civ.App.-Fort Worth 1977, writ ref'd n.r.e.) (holding same under rule 12). The only question before the court is whether Ramon Garcia had implied authority pursuant to the contract with TMTCI to opt the cities out of the litigation.

■■■ A similar question is whether an attorney has authority to nonsuit a client's claim without prior consent. Texas courts have held that an attorney has implied authority to nonsuit a client's claim when the nonsuit does not affect a substantial right or bar the bringing of another suit based on the same cause of action. *See Fed. Underwriters Exch. v. Read*, 142 S.W.2d 440, 443 (Tex.Civ.App.-Beaumont 1940), *rev'd on other grounds*, 138 Tex. 271, 158 S.W.2d 767 (1942); *Dyer v. Johnson*, 19 S.W.2d 421, 425 (Tex.Civ.App.-Fort Worth 1929, writ dism'd w.o.j.); *see also* C.R. McCorkle, Annotation, *Authority of Attorney to Dismiss or Otherwise Terminate Action*, 56 A.L.R.2d 1290. Just as a nonsuit terminates litigation between the plaintiff and the nonsuited defendant, opting out of a class action has the effect of terminating the particular litigation as to that class plaintiff. Opting out does not, of itself, cause a loss of any substantial rights, as the party can bring its own suit on the same cause of action. Pursuant to his contractual employment to pursue unpaid franchise fees through litigation, Garcia had authority to opt the cities out of the class action. The cities were not required to hold an open meeting to specifically authorize the opt-out requests. Because the decision to opt out was within their attorney's authority, the trial court abused its discretion in refusing the cities' opt-out requests.

## V

The cities claim that the settlement the trial court approved is unfair because the gas companies are allowed to recover any funds paid to the cities and class counsel by increasing the gas costs to their customers, the cities' residents. Although the cities make an interesting argument, we do not reach the issue because we hold six of the petitioner cities are not bound by the settlement and the seventh failed to object to the settlement in the trial court. Tex. R.App. P. 33.1(a)(1)(A).

## VI

Because the cities of San Benito, Palmview, Alton, La Villa, Port Isabel, and Edcouch properly opted out of the class, we reverse the judgment of the court of appeals and render judgment that they are not members of the class action. However, we affirm the judgment as to the city of Pharr because there is no evidence in the record that Pharr filed a notice to opt out or that it objected to the settlement in the trial court.

Justice ENOCH did not participate.