Footnotes
in HTML versions of opinions are designated by boxes (click on the box the
footnote text) and are not numbered. For an exact copy of the opinion, retrieve
the Adobe PDF version.

 

IN
THE SUPREME COURT OF TEXAS

 

════════════

No.
04-0245 

════════════

 

In re Lumbermens Mutual
Casualty Company, Relator

 

════════════════════════════════════════════════════

On
Petition for Writ of Mandamus

════════════════════════════════════════════════════

 

Argued March 30, 2005

 

            Justice O’Neill delivered the opinion of
the Court.

            The
issue in this case is whether an insurer that posted a $29 million bond to
supersede an adverse judgment against its insured may intervene in the
insured’s appeal to assert a potentially dispositive
issue that its insured abandoned in order to settle certain uninsured claims in
another pending lawsuit. The court of appeals denied
the insurer’s motion to intervene, and the insurer petitioned this Court for
mandamus relief. We hold that, under the unique facts presented, the court of
appeals abused its discretion and, accordingly, conditionally grant the writ of
mandamus.I. Background

            Sonat Exploration Company, the owner of several gas wells in Louisiana, entered into a Master Service
Agreement (MSA) with Cudd Pressure Control, Inc. The
agreement provided that Cudd would conduct “snubbing”
operations, which involved forcing pipe into Sonat’s
high-pressure wells during well-servicing procedures. The MSA provided that Cudd and Sonat would defend and
indemnify each other for any claims brought by their respective employees. It
also contained language that Sonat contends, in a
separate lawsuit, required Cudd to provide insurance
coverage to Sonat. Lumbermens Mutual Casualty Company was Cudd’s excess-liability insurer at the time the parties
entered into the MSA. 

            In
1998, an explosion occurred during snubbing operations at the Otto Cummings No.
2-Alt. well in Louisiana.
The explosion killed seven people, including four Cudd
employees, and severely injured three others. When Cudd’s
employees and their families brought wrongful-death and personal-injury
lawsuits in Texas
against Cudd and Sonat, Cudd refused to indemnify Sonat
and Lumbermens did not provide coverage to Sonat. As a result, Sonat filed a
cross-claim against Cudd for indemnity, which was
severed from the personal-injury suit and constitutes the underlying proceeding
here. Sonat also filed a separate
breach-of-contract action against Lumbermens and Cudd, claiming that it was an additional insured under Cudd’s policy and, alternatively, that Cudd
had breached a contractual obligation to procure insurance covering Sonat.

            Sonat eventually settled the personal-injury suits, and the
underlying indemnity action proceeded. One of the issues presented was whether Texas or Louisiana
law applied to the indemnity claim. The parties contended the issue was
potentially dispositive because under Louisiana statutory law the MSA’s
indemnity provision was void, while under Texas law it was valid. The trial court
granted partial summary judgment in Sonat’s favor,
holding that Texas
law applied and Sonat was entitled to indemnity for
the damages it had paid to settle the Cudd employees’
lawsuits. The case went to trial on damages only, and the jury returned a $20.7
million verdict in Sonat’s favor upon which the trial
court rendered judgment. Cudd filed a notice of
appeal from the trial court’s judgment and from “all other ruling[s], orders
and judgments rendered against Cudd in this matter.” Lumbermens posted the $29 million appellate security, and Sonat has not offered to release Lumbermens
from that obligation. 

            After
Cudd perfected its appeal in the indemnity case
underlying this mandamus proceeding, Cudd and Sonat entered into a Rule 11 Agreement in the
breach-of-contract suit pursuant to which Cudd agreed
to forgo any further challenge to the trial court’s choice-of-law ruling, and Sonat agreed to nonsuit its
pending breach-of-contract claim against Cudd. Two
days later, Cudd filed its appellate brief in the
indemnity appeal, which did not raise the choice-of-law issue. Sonat then filed a motion to dismiss with prejudice its
breach-of-contract claim pursuant to the Rule 11 Agreement, which the trial
court granted. Ten weeks after Cudd filed its
appellate brief, Lumbermens sought leave to intervene
in the court of appeals in order to preserve the choice-of-law issue. The court
of appeals denied Lumbermens’ motion, and the appeal
remains pending in that court.

II. Standard
of Review

            At
the outset, we note that the issue presented has been somewhat miscast. Lumbermens contends the equitable virtual-representation
doctrine entitles it to “intervene” on appeal to assert the choice-of-law issue
that its insured abandoned. Under that doctrine, a
litigant is deemed to be a party if it will be bound by the judgment, its privity of interest appears from the record, and there is
an identity of interest between the litigant and a named party to the judgment.
Motor Vehicle Bd. of Tex. v. El Paso Indep. Auto. Dealers Ass’n, 1 S.W.3d 108, 110 (Tex. 1999). Because one
who is virtually represented is already deemed to be a party, theoretically it
“is not required to intervene in order to appeal.” City of
San Benito v. Rio Grande Valley Gas Co., 109
S.W.3d 750, 752 (Tex.
2003). However, as a practical matter, one who seeks to invoke the
virtual-representation doctrine in order to assert an interest on appeal must
take some timely, appropriate action to attain named-party status. See City
of San Benito, 109 S.W.3d at 755 (noting that unnamed class member invoking
doctrine had not been “laying behind the log” by
waiting until eve of settlement to intervene); El Paso Indep.
Auto. Dealers Ass’n, 1 S.W.3d at 110-12
(examining whether party seeking to appeal based on the doctrine had waived its
rights); Cont’l Cas. Co. v. Huizar, 740
S.W.2d 429, 430 (Tex.
1987) (holding that insurer waived right to appeal because it voluntarily paid
judgment against insured). In this case, Lumbermens
filed a motion to intervene in the court of appeals, a vehicle we consider
appropriate to obtain named-party status if Lumbermens
meets the requirements necessary to assert the virtual-representation doctrine,
and if equitable considerations do not weigh against allowing Lumbermens to participate on appeal. 

            Given
the relatively unique procedural posture of this case, it is not surprising
that we have not articulated the standard of review by which to measure the
court of appeals’ denial of Lumbermens’ intervention.
The parties here assume that an abuse-of-discretion standard governs our
review, and we agree. When reviewing a trial court’s decision to strike a
party’s intervention under Rule 60 of the Rules of Civil Procedure, we apply an abuse-of-discretion standard. Guar. Fed. Sav. Bank v. Horseshoe Operating Co.,
793 S.W.2d 652, 657 (Tex.
1990). And although Rule 60 does not speak to a party’s
effort to intervene on appeal, we have generally applied an abuse-of-discretion
standard when a party seeks mandamus relief from a court of appeals’ order
limiting appellate rights. See Rios v. Calhoon,
889 S.W.2d 257, 258 (Tex. 1994); Nat’l
Union Fire Ins. Co. v. Ninth Court of Appeals, 864 S.W.2d 58, 59 (Tex. 1993). Accordingly,
we review the court of appeals’ decision for abuse of discretion. 

III. Parties’
Arguments

            Lumbermens contends the court of appeals abused its
discretion in rejecting Lumbermens’ intervention
because, as Cudd’s insurer and the party that posted
the appellate security, Lumbermens is bound by the
judgment in the case. Accordingly, Lumbermens claims
it is entitled to appeal the trial court’s choice-of-law ruling under the
doctrine of virtual representation. See City of San Benito, 109 S.W.3d
at 754-55. Lumbermens acknowledges that our
rules of procedure provide no specific mechanism for allowing a party to
intervene for the first time on appeal. But Lumbermens
maintains that the $29 million bond it posted to secure the underlying judgment
and its potential liability for that judgment vest it with an interest
protected under the Due Process Clause of the Fourteenth Amendment to the
United States Constitution and the due-course-of-law provision of the Texas
Constitution. U.S. Const. amend. XIV, § 1; Tex. Const. art.
I, § 19. Lumbermens further
claims it had no cause to intervene before Cudd
elected not to contest the trial court’s choice-of-law determination on appeal.
Until that point, Lumbermens contends, its insured
adequately represented Lumbermens’ interests. 

            On
the other hand, Sonat claims the court of appeals did
not abuse its discretion in denying Lumbermens’
intervention. According to Sonat, the
virtual-representation doctrine does not entitle Lumbermens
to participate in the appeal because there must be an identity of interests
between the party claiming the doctrine’s benefit (Lumbermens)
and a party to the judgment (Cudd), and Lumbermens has expressly acknowledged that its and Cudd’s interests have diverged. Sonat
further contends Lumbermens has no due-process stake
in the appellate proceedings because, if Cudd does
not prevail in its appeal, Lumbermens can invoke a noncooperation clause in Cudd’s
policy to deny coverage and ultimately avoid the judgment. Sonat
also contends that, if Lumbermens desired to
intervene, it had to do so before the trial court rendered a final judgment and
any attempt to intervene on appeal was untimely. And even if intervention on
appeal was permissible, Sonat maintains, Lumbermens waited too long to avail itself of that
procedure by failing to seek leave until after all the appellate briefing was
completed. Finally, Sonat asserts that allowing
intervention would be bad public policy because it could complicate virtually
all appellate proceedings involving liability insurance by enabling insurers to
second-guess their insureds’ decisions regarding the
appropriate issues to raise on appeal. Such a course,
contends Sonat, would be inconsistent with Texas’s status as a
state that generally does not permit insurers to join in tort actions against
their insureds. See, e.g.,
Tex. R. Civ. P. 38(c) (prohibiting joinder
of a liability or indemnity insurance company unless the insurer is liable by
statute or contract to the injured person); Tex. R. Civ. P.
51(b) (same).

IV.
Virtual-Representation Requirements

            Generally,
only parties of record may appeal a trial court’s judgment. El Paso Indep. Auto. Dealers Ass’n, 1 S.W.3d at 110. On a few occasions, though, we
have determined that a person or entity who was not a named party in the trial
court may pursue an appeal in order to vindicate important rights. In El
Paso Independent Automobile Dealers Ass’n, for
example, we held that the court of appeals erred in dismissing the Motor
Vehicle Board’s and Attorney General’s appeal of a judgment declaring Texas’s “Blue Law”
unconstitutional. Id. at 111. In the underlying case, the El Paso Independent
Automobile Dealers Association sued the El Paso District, City, and County Attorneys
seeking a declaration that the Blue Law, which made it illegal to sell cars on
consecutive weekend days, was unconstitutional. Id. at 110. Although the Association’s petition did not name
the Board or the Attorney General as defendants, the Association served the
Attorney General with a copy of its petition in compliance with section
37.006(b) of the Texas Civil Practice and Remedies Code. Id. The Attorney General, by letter,
declined to participate in the case. Although the local officials filed a
general denial, they ultimately concluded that the Blue Law was, in fact,
unconstitutional and negotiated a pretrial agreement for findings of fact and
conclusions of law in line with that conclusion. Id. After the trial court rendered
judgment declaring the Blue Law unconstitutional and enjoining its enforcement,
the Attorney General and the Board filed post-judgment motions in an attempt to
intervene. Id.
The trial court denied the motions. Id.
We held that the Attorney General and the Board, who bore statutory-enforcement
responsibilities, were entitled to appeal under the virtual-representation
doctrine. Id. at 110-11. Similarly, in City of San Benito, we held that unnamed class
members who had contested the fairness of a proposed settlement and attempted
to opt out of a class action were entitled to appeal the settlement under the
same doctrine. City of San Benito,
109 S.W.3d at 755. 

            In
this case, Sonat contends Lumbermens
may not invoke the virtual-representation doctrine’s benefit because Lumbermens has acknowledged that its interests and Cudd’s have diverged, in that Cudd
no longer wishes to contest the trial court’s choice-of-law decision. Lumbermens responds that its and Cudd’s
ultimate aim—to reverse the underlying judgment— remains the same. We agree
with Lumbermens. The identity of interest upon which
the virtual-representation doctrine in this case turns relates to protecting
the funds that the underlying judgment puts at risk. See Huizar, 740 S.W.2d at 434 (Gonzalez, J., dissenting). That different legal theories may be asserted
to defend those funds does not defeat the identity of interest between Lumbermens and Cudd that the
insuring contract creates and the virtual-representation doctrine protects. 

            In
any event, our decisions in El Paso Independent Automobile Dealers Ass’n and City of San Benito illustrate that the
position of one who relies on the virtual-representation doctrine to appeal and
the party that formerly represented its interests will have often, if not
always, diverged to some extent by the time the beneficiary of the doctrine
invokes it. In El Paso Automobile Dealers Ass’n,
for example, the interests of the Attorney General and the Motor Vehicle Board
in defending the Blue Laws’ constitutionality were initially protected by the
local attorneys. Not until those attorneys abandoned their defense of the
statute did the need arise for the Attorney General and the Board to directly
participate in order to protect their interests. Despite the diverging
positions of the state and local entities regarding the Blue Law’s
constitutionality, we held that the Attorney General and the Board were entitled
to appeal. 1 S.W.3d at 110-11. And in City of San Benito, the
interests of the named class representatives who supported the proposed class
settlement had clearly diverged from those of the settlement’s opponents. See
109 S.W.3d at 756. Thus, that Lumbermens’
interest in pursuing the choice-of-law issue had diverged from Cudd’s by the time Lumbermens
filed its intervention motion does not defeat Lumbermens’
ability to participate in the appeal pursuant to the virtual-representation
doctrine.

            Sonat contends Lumbermens should
not be allowed to invoke the virtual-representation doctrine because it can
ultimately avoid coverage for the judgment by invoking a noncooperation
clause in Cudd’s policy. But irrespective of any
potential coverage dispute between Lumbermens and Cudd, Lumbermens has pledged $29
million to secure the judgment in Sonat’s favor. Even
if Lumbermens could eventually recoup the amount it
has pledged through a potential coverage suit against Cudd,
its obligation to pay the underlying judgment to Sonat
is immediate and binding in the event Cudd’s appeal
is unsuccessful. 

            In
this case, neither the fact that Cudd’s and Lumbermens’ interests in pursuing appeal of the
choice-of-law issue have diverged, nor the possibility that Lumbermens
could later assert a noncooperation defense against Cudd, prevent Lumbermens from
invoking the virtual-representation doctrine. But because the doctrine is
equitable, we must determine whether other considerations weigh against
applying the doctrine to allow Lumbermens’
intervention on appeal. See Huizar, 740 S.W.2d
at 430 (holding that right to appeal insurer may have had under
virtual-representation doctrine was waived by voluntary payment of judgment); see
also Gonzalez v. Banco Cent. Corp., 27 F.3d
751, 761 (1st Cir. 1994) (“[V]irtual representation
is best understood as an equitable theory rather than as a crisp rule with
sharp corners and clear factual predicates . . . such that a party’s status as
a virtual representative of a nonparty must be determined on a case-by-case
basis.” (citation omitted); Tyus v. Schoemehl, 93 F.3d 449, 455 (8th Cir. 1996); see
City of San Benito, 109 S.W.3d at 756 (emphasizing that intervening class
members had preserved appellate rights by attempting to opt out of class and
objecting to settlement). 

V. Timing
Considerations

A.
Post-judgment Action

            Sonat contends that, even if Lumbermens
had a right to participate on appeal, the court of appeals did not abuse its
discretion in denying Lumbermens’ intervention
because Lumbermens only attempted to do so after the
trial court’s judgment became final. Ordinarily, a trial court does not abuse
its discretion by denying a motion to intervene after the court has rendered a
final judgment. Comal County Rural High Sch. Dist. No. 705 v. Nelson, 314 S.W.2d 956, 957 (Tex. 1958). But
our decisions in City of San Benito and El Paso Independent
Automobile Dealers Ass’n demonstrate that one who
has been virtually represented may be entitled to invoke a right of participation
as a named party after judgment has been rendered. Those decisions stem from
our recognition that “‘[t]o hold otherwise would deprive nonnamed
[parties who will be bound by a judgment] of the power to preserve their own
interests.’” City of San Benito, 109 S.W.3d at 754 (quoting Devlin v.
Scardelletti, 536 U.S. 1, 10 (2002)); see also
United Airlines, Inc. v. McDonald, 432 U.S. 385, 395-96 (1977) (holding
that member of putative class was entitled to intervene to appeal denial of
class certification after trial court rendered final judgment incorporating
named plaintiffs’ settlement with defendant); Ross v. Marshall, 426 F.3d
745, 761 (5th Cir. 2005) (holding that insurer that correctly anticipated its
insured would drop its appeal was entitled to intervene to appeal adverse
judgment against insured). It is true that, because virtual representation is
an equitable doctrine, other factors may weigh against allowing intervention
after final judgment has been rendered. While other equitable factors may weigh
against allowing a virtually-represented party to invoke appellate rights, the
mere fact that the party does not attempt to invoke those rights until after
judgment, when the need to invoke them arose, is not dispositive.

B. Timeliness

            Sonat argues that Lumbermens is
not entitled to intervene because it did not attempt to do so until after Cudd filed its reply brief in the court of appeals, ten
weeks after Sonat nonsuited
its breach-of-contract claims and Cudd failed to
raise the choice-of-law issue in its initial appellate brief. We have never
articulated a particular standard for evaluating the timeliness of a
virtually-represented party’s effort to invoke appellate rights. But we find
useful the test that the Fifth Circuit has recently articulated for evaluating
the timeliness of a motion to intervene as of right under Rule 24(a)(2) of the Federal Rules of Civil Procedure. Considerations under that test are (1) the length of time during which
the would-be intervenor should have known of its
interest in the case before attempting to intervene; (2) the extent of
prejudice that the existing parties may suffer as a result of the would-be intervenor’s failure to apply for intervention as soon as
it actually knew or should have known of its interest in the case; (3) the
extent of prejudice the would-be intervenor would
suffer if intervention is denied; and (4) the existence of unusual
circumstances militating either for or against a determination that the
application is timely. Ross, 426 F.3d at 754.
These factors “give structure to [the] timeliness analysis, [but the analysis]
remains ‘contextual’ and should not be used as a ‘tool of retribution to punish
the tardy would-be intervenor, but rather [should
serve as] a guard against prejudicing the original parties . . . .’” Id. (quoting Sierra
Club v. Espy, 18 F.3d 1202, 1205 (5th Cir. 1994)).

            The
first factor “‘focuses on the time lapse between the applicant’s receipt of
actual or constructive knowledge of his interest in the litigation and the
filing of his motion for intervention.’” Id.
at 754 (quoting Edwards v. City of Houston, 78 F.3d 983, 1000 (5th Cir.
1996)). The “‘critical inquiry . . . is whether in view of all the
circumstances the intervenor acted promptly’” to
protect its interests. Id. at 755 (quoting United Airlines, 432 U.S. at
395-96). When, as here, a would-be intervenor’s
interests have been represented by a named party, promptness is measured from
the point that “‘it became clear . . . that [the would-be intervenor’s]
interests . . . would no longer be represented by [the named party].’” Id.
(quoting United Airlines, 432 U.S. at 394). In United
Airlines, an unnamed putative classmember sought
to intervene in order to appeal the denial of class certification, and did so
within three weeks of the date the named classmembers’
settlement was incorporated into a final judgment. United
Airlines, 432 U.S.
at 390. 

            In
this case, ten weeks elapsed between the time Lumbermens
became aware that Cudd would not pursue the
choice-of-law ruling and the time Lumbermens filed
its motion to intervene. Lumbermens explains this
delay by pointing to the novel posture of this case and the uncertainty created
by the lack of any specific rule providing for intervention on appeal. In
evaluating the reasonableness of an appellant’s explanation of delay in
perfecting an appeal, we have given weight to the fact that the underlying
procedural rules were unclear. See Hone v. Hanafin,
104 S.W.3d 884, 888 (Tex. 2003). In Hanafin,
the appellants failed to timely file notice of an accelerated appeal based on
their belief that their request for findings of fact and conclusions of law had
extended the deadline. We noted that courts and scholars disagreed about
whether filing such a request extended the deadline for perfecting an appeal,
and that our appellate rules did not clearly state that doing so would not
extend the deadline. Id.
Consequently, we held that the appellants had reasonably explained their
failure to timely file their notice of appeal. Id. While it would have been
preferable for Lumbermens to have acted more promptly
in light of Sonat’s nonsuit
in the breach-of-contract case, we agree that under the circumstances of this
case, Lumbermens did not wait an inexcusably long
period of time to attempt to invoke appellate rights under the
virtual-representation doctrine after it became aware that Cudd
would not pursue the choice-of-law issue on appeal.

            The
second factor in the Fifth Circuit’s timeliness test is the extent of prejudice
that the existing parties may suffer as a result of the applicant’s failure to
apply for intervention at an earlier time; this factor “‘is concerned only with
the prejudice caused by the applicants’ delay, not that prejudice which may
result if intervention is allowed.’” Ross, 426 F.3d at 755 (quoting Edwards,
78 F.3d at 1002). Sonat contends it was prejudiced by
Lumbermens’ delay because Lumbermens
seeks to raise issues that were not raised in Cudd’s
initial appellant’s brief, effectively contravening Rule 38.1(e) of the Rules
of Appellate Procedure. But until Cudd filed a brief
that omitted the choice-of-law issue, Lumbermens had
no cause to attempt to intervene. Sonat further
argues, though, that it will suffer prejudice because it has already filed its
responsive brief. However, Rule 38.7 of our appellate rules empower
the courts of appeals to allow parties to amend or supplement their briefs
whenever justice requires. Tex. R. App. P.
38.7. If Lumbermens is permitted to raise the
choice-of-law issue based on the virtual-representation doctrine, then justice
would surely require that Sonat be permitted to
respond. 

            The
third factor the Fifth Circuit considers is the extent of prejudice the
applicant would suffer if intervention is not permitted. Ross, 426 F.3d at 754. It is undisputed that the choice-of-law
issue is potentially dispositive. Although Lumbermens invites us to decide the choice-of-law issue, we
make no judgment regarding the issue’s merits. But if the trial court erred in
its choice-of-law decision and the judgment stands despite that error, then the
prejudice to Lumbermens is obvious and severe. “‘[I]t
is essential to our system of justice, that litigants should have their day in
court.’” United Airlines, 432 U.S. at 395 n.16 (quoting Am. Brake
Shoe & Foundry Co. v. Interborough Rapid Transit
Co., 3 F.R.D. 162, 164 (S.D.N.Y 1942)); see also Verburgt
v. Dorner, 959 S.W.2d 615, 616-17 (Tex. 1997)
(disfavoring disposition of appeals based upon harmless procedural defects); Tex. R. Civ. P.
1 (“The proper objective of rules of civil procedure is to obtain a just, fair,
equitable and impartial adjudication of the rights of litigants under
established principles of substantive law”) (emphasis added).

            The
fourth factor the Fifth Circuit considers is “the existence of unusual
circumstances militating either for or against a determination that the
application is timely.” Ross, 426 F.3d at 754.
To some extent, the fact that Sonat nonsuited its breach-of-contract claims against Cudd with prejudice militates against finding that Lumbermens’ effort to intervene in this case was timely. But in several of the cases we have cited, a virtually-represented
party was allowed to appeal despite the fact that the opposing party had
negotiated a settlement with the virtual representative. In Ross, the
plaintiff had negotiated an agreement with the insured under which no
appeal of the underlying judgment would have ensued if the Fifth Circuit had
not permitted the insurer’s intervention. Moreover, if Lumbermens
is not permitted to intervene and the choice-of-law issue is meritorious, Cudd will have essentially foisted liability for uninsured
claims onto its insurer. Cf. State Farm Fire & Cas. Co. v. Gandy, 925 S.W.2d
696, 713 (Tex. 1996) (invalidating assignment of bad faith claims on public
policy grounds when insured abandoned its natural position in order to take
advantage of insurer). 

            In
light of the novel posture of this case, the extent of likely prejudice to Lumbermens if it is not allowed to raise the choice-of-law
issue its insured abandoned, and the unlikelihood of prejudice to Sonat resulting from the timing of Lumbermens’
effort to invoke appellate rights, we conclude that the timing of Lumbermens’ motion does not prevent its intervention.

C. Public
Policy

            Sonat argues that if Lumbermens
is permitted to appeal in this case, then all insurers, indemnitors,
and other similarly-situated parties will be entitled to intervene on appeal,
potentially interfering with insureds’ appellate
strategy or raising issues contrary to their insureds’
interests or colluding with their insureds to expand
briefing schedules or page limitations. We note that analogous concerns
arguably exist when an insurer intervenes in the trial court, and Sonat seems to agree that Lumbermens
would have been entitled to intervene in the trial court if Cudd
had opted not to pursue the choice-of-law issue there. Nevertheless, we agree
that every disagreement between an insured and its liability insurer would not
justify separate appeals. As we recently acknowledged ,
the insurance policy determines whether an insurer or its insured has the right
to control litigation, a contract right that would be defeated if every
disagreement between the two justified each in filing its own appeal. See N.
County Mut. Ins. Co. v. Davalos, 140 S.W.3d 685, 688-89 (Tex. 2004). , However, our
procedural rules favor the resolution of cases based upon substantive
principles. Verburgt, 959
S.W.2d at 616-17; Tex. R. Civ. P. 1 We reiterate that
whether a would-be intervenor is entitled to appeal
under the virtual-representation doctrine is an equitable determination that
must be decided on a case-by-case basis. Our decision today is limited to the
situation presented.

VI. Conclusion


            We
hold that under the unusual circumstances this case presents, Lumbermens is entitled to invoke the virtual-representation
doctrine to raise on appeal the choice-of-law issue its insured abandoned in
order to settle uninsured claims in another suit, and the court of appeals
abused its discretion in holding otherwise. Accordingly, we conditionally grant
the writ of mandamus and direct the court of appeals to permit Lumbermens’ participation to contest the trial court’s
choice-of-law ruling. The writ will issue only if the court fails to do so.

 

 

__________________________________________

Harriet
O’Neill

Justice

 

OPINION DELIVERED:
February 3, 2006.