

NUMBER 13-08-00192-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

FRED L. PEREZ, M.D.,                                              Appellant,

v.

SANTOS SALINAS AND WIFE, ARGELIA SALINAS,                  Appellees.

On appeal from the 398th District Court
of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Benavides
Memorandum Opinion by Justice Rodriguez**

Appellees, Santos Salinas and his wife, Argelia Salinas, filed a health care liability

claim against John T. Hannigan, a certified registered nurse anesthetist (CRNA), who is

not a party to this appeal, and appellant, Fred L. Perez, M.D.  In this accelerated appeal,

Dr. Perez contends that the trial court abused its discretion in denying his motion to dismiss

appellees' health care liability claim because their expert reports did not comply with section 74.351 of the Texas Civil Practices and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (Vernon Supp. 2008). We affirm.

## I. BACKGROUND

Appellees sued Dr. Perez alleging that he breached the standard of care for an orthopedic surgeon by allowing a CRNA to perform an interscalene block while he performed surgery on Mr. Salinas's shoulder, causing injury to Mr. Salinas. Specifically, appellees argue that the applicable standard of care requires that this procedure be performed by an anesthesiologist. Appellees timely served Dr. Perez with expert reports prepared by James E. Butler, M.D. and Hector J. Herrera, M.D. Dr. Perez filed objections to appellees' expert reports and a motion to dismiss appellees' lawsuit arguing that the expert reports did not meet the statutory requirements of section 74.351(r)(6). *See id.* After a hearing, the trial court denied Dr. Perez's motion to dismiss.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

We review a trial court's ruling on a motion to dismiss a health care liability claim for an abuse of discretion. *Valley Baptist Med. Ctr. v. Azua*, 198 S.W.3d 810, 815 (Tex. App.–Corpus Christi 2006, no pet.). A trial court abuses its discretion when it acts "'without reference to any guiding rules and principles' or, stated another way, whether its decision was arbitrary or unreasonable." *City of San Benito v. Rio Grande Valley Gas Co.*, 109 S.W.3d 750, 757 (Tex. 2003) (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985)).

In order to comply with section 74.351(r)(6), an expert report must set out the standard of care for each defendant, describe how each defendant breached that standard of care, and explain how such breach caused the plaintiff's injury. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (r)(6); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877 (Tex. 2001). Section 74.351(l) provides that, "[a] court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in subsection (r)(6)." *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(l); *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002).

### III. ANALYSIS

By one issue, Dr. Perez contends that the trial court abused its discretion in denying his motion to dismiss appellees' health care liability claim because the expert reports provided by appellees were not a "good faith effort" to comply with the statutory requirements of section 74.351. In four sub-issues, Dr. Perez specifically argues that Dr. Herrera is not qualified to render an opinion and that Dr. Butler's report did not set out the standard of care, identify any breaches of the standard of care, and did not establish a causal link.

In support of their healthcare liability claim, appellees provided the expert reports of Dr. Herrera and Dr. Butler. Dr. Herrera provided his opinion regarding the applicable standard of care in the administration of interscalene blocks for shoulder surgery. Dr. Butler provided his opinion that (1) Dr. Perez deviated from the standard of care in allowing a CRNA, rather than an anesthesiologist, to administer the interscalene block, (2) Dr.

3

Perez should have requested that a physician anesthesiologist administer the interscalene block, (3) Dr. Perez should have foreseen the probability of Mr. Salinas's injury by allowing a CRNA to administer the interscalene block, and (4) the deviation from the standard of care, in reasonable medical probability, was a proximate cause of Mr. Salinas's injury. Dr. Butler further states that Dr. Perez could have prevented Mr. Salinas's injury by not allowing a CRNA to administer the interscalene block.

In his first sub-issue, Dr. Perez contends that Dr. Herrera is is not qualified to render an opinion. In his expert report, Dr. Herrera states that he is licensed to practice medicine in Texas and is board certified in anesthesiology. He received his "M.D. degree from UTBM at Galveston and did [his] anesthesiology residency at the University of Texas Health Science Center at Houston." Dr. Herrera is a staff member of Methodist Hospital and Texas Orthopedic Hospital in Houston, Texas. His medical practice includes general anesthesia for general surgery and orthopedic surgery. In his practice of anesthesia for orthopedic surgery, he "perform[s] upper and lower extremity blocks." Dr. Herrera has been involved in over 1500 cases involving interscalene blocks for shoulder surgery, the procedure performed by the CRNA on Mr. Salinas. We conclude that, although Dr. Herrera is not a orthopedic surgeon, the record reflects that his experience and expertise regarding interscalene blocks during orthopedic surgery qualify him as an expert to give an opinion on that subject. *See* TEX. R. EVID. 702 (providing that the test is whether "the offering party [has] established that the expert has 'knowledge, skill, experience, training, or education' regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject"); *Ehrlich v. Miles*, 144 S.W.3d 620, 624 (Tex. App.–Fort Worth 2004, pet. denied) ("A medical expert who is not of the same school of

4

medicine, however, is competent to testify if he has practical knowledge of what is usually and customarily done by a practitioner under circumstances similar to those confronting the defendant."); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 74.401(a) (Vernon 2005) (setting out that a person may qualify as an expert witness in a suit against a physician if that person has "knowledge of accepted standards of medical care" involved in the claim and "is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care"); *Roberts v. Williamson*, 111 S.W.3d 113, 121 (Tex. 2003) (providing that the court "rejected the notion" that a physician giving his opinion in the expert report has to practice within the same specialty area as the defendant if the offering party has established that the physician has the qualifications to give his opinion on that particular subject).

Dr. Perez argues in his second sub-issue that Dr. Butler's report did not set forth the standard of care. However, in his report, Dr. Herrera opined that the standard of care in Texas for interscalene blocks for shoulder surgery "requires that it be done by an anesthesiologist (medical doctor) and not by a CRNA." Because Dr. Herrera's report established the standard of care in appellees' health care liability claim, Dr. Butler was not required to establish the standard of care. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(i) (providing that "a claimant may satisfy any requirement of this section for serving an expert report by serving reports of separate experts" and that "[n]othing in this section shall be construed to mean that a single expert must address all liability and causation issues"); *Packard v. Guerra*, 252 S.W.3d 511, 531 (Tex. App.–Houston [14th Dist.] 2008, pet. filed) ("[S]ection 74.351(i) permits a claimant to satisfy any requirement of section 74.351 for serving an expert report by serving reports of separate experts.").

5

In his third sub-issue, Dr. Perez contends that the experts' reports did not identify any breaches of the standard of care. Specifically, Dr. Perez argues that Dr. Butler's report relies on the "captain of the ship" doctrine which has been disapproved by the supreme court, *see Sparger v. Worley Hosp., Inc.*, 547 S.W.2d 582, 585 (Tex. 1977), and that Dr. Butler's report is contradictory.

Dr. Perez is correct that Dr. Butler referred to the "captain of the ship" doctrine in his report. However, Dr. Butler did not rely on this doctrine for his opinion that Dr. Perez breached the standard of care. In fact, Dr. Butler clearly states in his report that Dr. Perez deviated from the standard of care by allowing the CRNA to administer the interscalene block. In his report, Dr. Butler states:

> The records fail to show that an M.D. anesthesiologist was present, or took part in the anesthesia at all.
>
> . . .
>
> In this case, Dr. Perez, the orthopedic surgeon, allowed a CRNA rather than an anesthesiologist to administer the interscalene block which, in my opinion, was a deviation of the standard of care.
>
> . . .
>
> [Dr. Perez] should have foreseen that the probability of an injury of the brachial plexus by allowing a CRNA to administer the interscalene block on Mr. Salinas.
>
> This deviation, in reasonable medical probability, was a proximate cause of Mr. Salinas' brachial plexus injury. Dr. Perez could have prevented the outcome sustained by Mr. Salinas by simply not allowing an interscalene block be performed by a CRNA.

Dr. Perez argues that Dr. Butler contradicts himself because he opines that an interscalene block should "never" be administered during shoulder surgery. However, in his report, Dr. Butler does not state that the interscalene block should not have been

6

administered but that, by improperly allowing a CRNA to administer the interscalene block, Dr. Perez violated the standard of care, which was the proximate cause of Mr. Salinas's injury.

In his fourth sub-issue, Dr. Perez contends that appellees' expert reports did not establish a causal link between Dr. Perez's alleged breach of the standard of care and Mr. Salinas's injury. Specifically, Dr. Perez argues that "Dr. Herrera does not explain how having a different person perform the interscalene block would have prevented all of the alleged injuries." We disagree. In his report, Dr. Butler explains that Dr. Perez's deviation from the standard of care, in reasonable medical probability, was a proximate cause of Mr. Salinas' brachial plexus injury and that Dr. Perez could have prevented the injury by not allowing a CRNA to perform the interscalene block on Mr. Salinas. Dr. Herrera explained Dr. Perez should have foreseen that allowing a CRNA to administer the interscalene block would cause injury to Mr. Salinas; Dr. Perez's deviation from the standard of care in reasonable medical probability was a proximate cause of Mr. Salinas' brachial plexus injury; and Dr. Perez could have prevented the injury by not allowing a CRNA to perform the interscalene block.

Therefore, we conclude that because appellees' expert reports represented an objective good faith effort to comply with 74.351(r)(6), the trial court did not abuse its discretion by denying Dr. Perez's motion to dismiss. *See Azua*, 198 S.W.3d at 815. We overrule Dr. Perez's sole issue.[1]

---

[1] In a final sub-issue, Dr. Perez contends that upon a plaintiff's failure to comply with section 74.351(a), the trial court must award attorney's fees to the defendant. Because we have concluded that appellees complied with section 74.351(a), and that the trial court did not abuse its discretion by denying Dr. Perez's motion to dismiss, we do not reach this sub-issue. *See* TEX. R. APP. P. 47.1 (providing that we must address "every issue raised and dispositive and necessary to final disposition of the appeal").

7

## IV. Conclusion

We affirm the trial court's judgment.

NELDA V. RODRIGUEZ
Justice

Memorandum Opinion delivered and
filed this 25th day of November, 2008.